Edgar C. THOMAS, et ux.

v.

ATLAS FOUNDATION COMPANY, INC.

No. 18322.

Court of Civil Appeals of Texas, Fort Worth.

Nov. 20, 1980.

Rehearing Denied Dec. 18, 1980.

Douglas R. Hudman, Fort Worth, for appellants.

Earl Rutledge, Fort Worth, for appellee.

MASSEY, Chief Judge.

Edgar C. and Flora Etta Thomas brought suit against a contractor and subcontractor for their alleged failure to construct a porch at the Thomas home in a good workmanlike manner. The Thomases sought treble damages under the Texas Deceptive Trade Practices Act, (DTPA), sec. 17.41 et seq.

Pursuant to jury trial, the Thomases were awarded judgment of $350.00 against the subcontractor Atlas Foundation Company, Inc. (Atlas). On the Thomas case against the general contractor, William N. Taylor, individually, d/b/a United Builder's Supply Company, the judgment was that the Thomases take nothing. The Thomases have appealed only the determination of the trial court that, as applied to Atlas, the Deceptive Trade Practice Act did not apply, plus the court's refusal to grant attorney's fees in addition to the amount awarded by judgment. Taylor is not a party on the appeal.

The Thomases sought out Taylor, as a general contractor, who contracted with them to perform certain improvements at their home, among them the construction of a porch. Taylor subsequently subcontracted the porch construction to Atlas.

After completion of the Taylor general contract Mr. Thomas was dissatisfied with the porch construction and called directly upon Atlas a number of times in an attempt to have repair work done. A few attempts to remedy the defects were made but never to Thomas' satisfaction. So far as is shown by the record Thomas never complained to or demanded anything of Taylor, but complained only to Atlas. We have no indication that Thomas ever notified Taylor of dissatisfaction with the subcontractor's performance.

Thomas sued both Taylor and Atlas. The jury, by answer to special issues, found failure by Atlas to construct the porch "in a good and workmanlike manner", and that such "failure" was a producing cause of damage to Thomas' home. The jury further found $350.00 to be the reasonable and necessary expense to place Thomas in the position he would have enjoyed had the Atlas work been performed in a good and workmanlike manner. (By answer to special issues 4 and 5 the jury found that though Taylor had not been given a reasonable opportunity to cure the defects before Thomas filed suit Atlas was given a reasonable opportunity to do so). It apparently was by a theory of Atlas' implied warranty (to Taylor–and by and through Taylor for the benefit of Thomas as third party beneficiary) that judgment was rendered against it for the $350.00 repair cost to bring the porch work to warranty.

Atlas did not appeal, so is deemed satisfied that it is liable to Thomas for the $350.00.

It is Thomas who has appealed. His claim is of rights under Tex.Bus. & Comm. Code Ann. Chapter 17, *Deceptive Trade Practices*, (DTPA) Sec. 17.01 et seq., (1968) and in particular Sec. 17.50 (Supp.1980), *Relief for Consumers*, and, in any event, for attorney's fees as stipulated.

Thomas contends that by holding that his claim did not come within the Texas DTPA the trial court erred. Thomas points out that Section 17.50(a)(2) of the DTPA expressly provides that a consumer may maintain an action where the "breach of an express or implied warranty" constitutes a producing cause of actual damages. Atlas agreed to construct the porch. By so doing Atlas impliedly warranted that all such work would be done in a good and workmanlike manner. The jury's finding is conclusive that Atlas failed in this regard. Therefore, Thomas argues, he has established a cause of action under the DTPA. *Boman v. Woodmansee*, 554 S.W.2d 33 (Tex. Civ.App.–Austin 1977, no writ); and *Woods v. Littleton*, 554 S.W.2d 662 (Tex.1977). Stated another way: the Thomas claim is that because there had been a failure by Atlas to construct in a good and workmanlike manner and because that failure was a producing cause of his actual damages the trebling of such damages is mandatory by provisions of the Deceptive Trade Practices Act.

We note that in both the *Boman* and *Woods* cases there existed privity between the parties. In a prior case we acknowledged the existence of an implied warranty by the contractor (on a different kind of contract) to the consumer. *New Trends, Inc. v. Stafford–Lowdon Co.*, 537 S.W.2d 778 (Tex.Civ.App.–Fort Worth 1976, writ ref'd n. r. e.). Such a warranty would likewise operate to create a like obligation of the subcontractor to the consumer. *Certain–Teed Products Corporation v. Bell*, 411 S.W.2d 596 (Tex.Civ.App.–Amarillo 1966, aff'd at 422 S.W.2d 719); *Metropolitan Casualty Co. of New York v. Medina Rural High School District No. 5*, 53 S.W.2d 1026 (Tex.Civ.App.–San Antonio 1932, writ dism'd). However, the recognition of the existence of an implied warranty by the subcontractor to the consumer would not equate with a finding that a breach of this warranty–in this case–had created a right of recovery under the Deceptive Trade Practices Act.

■ We agree with the Thomas contention that a plaintiff need not establish contractual privity in order to successfully establish a cause of action under the DTPA. *Hi–Line Electric Company v. Travelers Insurance Companies*, 587 S.W.2d 488 (Tex. Civ.App.–Dallas 1979, no writ); *Barthlow v. Metcalf*, 594 S.W.2d 143 (Tex.Civ.App.– Houston [1st Dist.], writ ref'd. n. r. e.). However, we disagree with the Thomas' contention that the mere breach of an implied warranty gives rise to a DTPA cause of action. We deem more to be required.

"The fundamental rule controlling the construction of a statute is to ascertain the intention of the Legislature expressed therein. That intention should be ascertained from the entire act, and not from isolated portions thereof. This Court has repeatedly held that the intention of the Legislature in enacting a law is the law itself; and hence the aim and object of construction is to ascertain and enforce the legislative intent, and not to defeat, nullify, or thwart it ... It is settled that the intention of the Legislature controls the language used in an act,

and in construing such act the court is not necessarily confined to the literal meaning of the words used therein, and the intent rather than the strict letter of the act will control." *City of Mason v. West Texas Utilities Co.*, 150 Tex. 18, 237 S.W.2d 273, 278 (1951).

As we read the Act we discern a legislative intent to curb deceptive trade practices, i. e., practices by unscrupulous merchants and manufacturers that are designed to mislead, and who, in the process, induce the public to purchase or contract. We find this perception of the act consistent with the holding in *Barthlow v. Metcalf, supra*, at 143. In that case an automobile wholesaler had turned back the odometer on a car prior to selling it to a dealer "in the stream of commerce" for resale. Thereafter the dealer, in good faith, sold the car to the plaintiff. Though there existed no privity between the wholesaler and the plaintiff we agree with the conclusion of the Houston court that the DTPA applied, so as to allow the plaintiff to recover treble damages. It is important to note that not only were the goods furnished by the defendant, albeit indirectly, "the misrepresentations ... were made in connection with (the) sale, ...." Stated differentially, the defendant's act of falsifying the mileage was instrumental in inducing the sale to the ultimate consumer at the determined price.

■ In the case under scrutiny there is no indication that the subcontractor Atlas was in any way responsible, through omission or commission, for any misleading or deceptive act or policy that induced Thomas to contract with Taylor.

Were a subcontractor to provide a contractor with a brochure containing false or deceptive claims, and should those brochures be used by the contractor to induce a consumer to contract, perhaps it would be proper to hold deceptive inducement. That situation is not presented. Here we have no indication that Atlas was intended by either Taylor or the Thomases, as of the time of their bargain to become Taylor's subcontractor. Atlas' only wrong is by the perpetuation of a failure of consideration

through its breach of implied warranty to properly construct the porch. The Thomas remedy is by the recovery of actual damages and (ordinarily) no more.

■ Though not entitled to attorney's fees by provisions of the law pertaining to the Deceptive Trade Practices Act we hold that the Thomases are nevertheless entitled to them for a different reason. The trial began with the following stipulation by the Atlas' attorney in open court:

> "It is stipulated by and between counsel for the parties that the attorney's fees to be recovered herein will be one–third of the actual damages for which judgment may be entered."

Because of the stipulation there must be reformation of the judgment so besides the $350.00 awarded as actual damages Thomas should recover, in addition, one–third thereof as attorney's fees. The attorney's fees amount is calculable as $116.67, making the total of the judgment proper to have been rendered $466.67, as of November 27, 1979, with interest thereon at 9% per annum, plus costs.

In view of our ruling on the points of error covered by our discussion there is no necessity to discuss the Thomases remaining point of error. We overrule it because it has become moot in view of our holding on the other points.

Judgment is reformed by adding thereto the sum of $116.67, and as reformed is affirmed. Costs are adjudged against Atlas Foundation Company, Inc.