**E.O. WOOD and M.N. Kaastad d/b/a E.O. Wood Company**

v.

**COMPONENT CONSTRUCTION CORPORATION.**

No. 2–85–292–CV.

Court of Appeals of Texas, Fort Worth.

Nov. 6, 1986.

Miteff & Finney and Meto Miteff, and Morris & Schieffer and Sandra Gould, Fort Worth, for appellants.

Jose, Sewell, Henry & Brantley and John S. Jose, Fort Worth, for appellee.

Before BURDOCK, HOPKINS and FARRIS, JJ.

## OPINION

BURDOCK, Justice.

E.O. Wood and M.N. Kaastad, third party defendant subcontractors below, appeal from a Deceptive Trade Practices Consumer Protection Act (DTPA) trebled judgment awarded to their general contractor, Component Construction Corporation, in a suit instituted by Colonial Southwest, Inc., the owner of a Fort Worth nursing home, arising out of a construction contract. Before trial, Component settled with Colonial and received an assignment of Colonial's cause of action. Component recovered nothing by virtue of its assignment, but was awarded damages in the amount of $19,320.00, trebled to $57,960.00 plus $17,000.00 attorney's fees through trial. We will affirm in part and reverse in part.

Appellants present points of error urging the trial court erred in rendering a new judgment after the original judgment had been set aside and a new trial granted; in failing to apply the 1975 version of the DTPA instead of the 1977 version; in entering judgment for Component absent a jury finding that Component was a consumer under the DTPA; in awarding attorney's fees; in apportioning damages under the comparative fault doctrine; in awarding damages under the theory of indemnity without supporting jury findings; and in failing to admit testimony of an expert witness.

The threshold problem has developed from the fact one judgment was signed on June 11, 1985 and another judgment was signed on September 24, 1985. The judgments were both in favor of Component, but differed in regard to amount of damages. Between the dates of the two judgments, appellants had filed a motion for new trial which was granted on September 12, in an order setting aside the first judgment. It is appellants' position the verdict of the jury and the judgment signed June 11th became merged, and the granting of a new trial operated to set aside the jury verdict, after which the case stood upon the trial docket as if it had not been tried. Consequently, it is claimed the September 24th judgment is a nullity since there had been no retrial of the case after the granting of the motion for new trial.

It is true the cases cited by appellants appear to bear out their contention, but all such opinions were written prior to the adoption of the Texas Rules of Civil Procedure. On the other hand, twenty years after the adoption of the rules, our Supreme Court, in considering a case in which the then-existing provision of TEX.R. CIV.P. 329b(3) controlled, held an order granting a new trial could be vacated at any time within the 45 days allowed for the determination of motions and amended motions for new trial by the existing rule 329b. There it was said:

> The purpose of the 1941 Rules of Procedure was to provide judges and practicing attorneys with simply stated directions relating to court procedures. Insofar as new trials are concerned definite periods of time are prescribed in which certain actions are to be taken.... An order granting a motion for new trial must be set aside, if at all, within the 45-day period set out in Rule 329 b, sec. 3.

*Fulton v. Finch,* 162 Tex. 351, 346 S.W.2d 823, 826–27 (1961).

The 1981 amendment to the rules was in effect when, in similar circumstances, the Corpus Christi Court of Appeals wrote:

The issue before us is whether a trial court can grant a new trial and then vacate its order granting the new trial and reinstate the original judgment after the seventy-five day period allowed by Rule 329b(c), T.R.C.P. has passed....

....

We hold that the trial court had no authority to vacate its order granting a new trial after the seventy-five days allowed....

*Smith v. Caney Creek Estates Club, Inc.,* 631 S.W.2d 233, 234–35 (Tex.App.—Corpus Christi 1982, no writ).

While neither of the above cases is exactly on point, the interpretation of the rules and rationale employed therein are useful in the determination of the question now before us.

 In the case at hand, the schedule of events is as follows:

| | |
|---|---|
| June 11, 1985 | Judgment signed |
| July 11, 1985 | Motion for New Trial filed |
| September 12, 1985 | Order granting new trial signed |
| September 24, 1985 | New Judgment signed |
| October 11, 1985 | Motion for new trial filed |

Since rule 329b(c) [1] provides a motion for new trial is considered overruled by operation of law in the event it is not determined within 75 days after judgment, we see from the above the motion for new trial was overruled by operation of law on August 25, 1985, 75 days after judgment. After that date, the court retained plenary power to vacate, modify, correct or reform the judgment for 30 days under section (e) of rule 329b.[2] We therefore hold that the second judgment, having been signed on the thirtieth day after the motion for new trial was overruled by operation of law, was valid. We are not called upon to ad-

dress the effect of signing the order granting a new trial some 17 days after the motion was overruled by law, because the last effective action taken during the 30 day plenary period was to sign the amended judgment. Points of error one and two are overruled.

Appellants next question the application of the Deceptive Trade Practices Consumer Protection Act to the facts of this case. Their claims are based primarily on the absence of a jury finding that Component was a consumer and that the version of the DTPA in effect at the material times, as a matter of law, precluded Component's status as a consumer. Appellants' position has been, and is, that the 1975 version of the Act applies, whereas the court shared Component's belief that the 1977 version of the Act should control. The import of the question is readily apparent in that the Act in existence after the 1975 amendment excluded services purchased for commercial or business use. Ch. 62, sec. 1, 1975 Tex. Gen.Laws 149. The term "commercial or business" was deleted from the Business and Commerce Code, sec. 17.45(2) by the 1977 amendment. Ch. 216, sec. 1, 1975 Tex.Gen.Laws 600. Consequently, a "person" as defined in the Act, could not have been a "consumer" if the services acquired had been for commercial or business use while the 1975 version was in effect, and prior to the effective date of the 1977 amendment, May 23, 1977.

The record facts upon which to determine which version of the Act controls this case are the following. On May 20, 1976, Component contracted to construct an expansion or addition to Colonial Manor Nursing Home and to remodel portions of the existing building. On June 30, 1976,

---

1. TEX R. CIV.P. 329b(c)

In the event an original or amended motion for new trial or a motion to modify, correct or reform a judgment is not determined by written order signed within seventy-five days after the judgment was signed, it shall be considered overruled by operation of law on expiration of that period.

2. TEX R. CIV.P. 329b(e)

If a motion for new trial is timely filed by any party, the trial court, regardless of whether an appeal has been perfected, has plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment until thirty days after all such timely-filed motions are overruled, either by a written and signed order or by operation of law, whichever occurs first.

Component contracted with appellants to install the roofing, gutter, downspouts, and roof flashings. That contract states appellants' work would be completed before December 17, 1976, so as not to interfere with Components' finishing its work by February 15, 1977.

There is no testimony clearly showing when appellants actually began and completed the work called for under their contract, although it is clear Component and appellants made efforts to correct leaks in both the existing roof and the newly constructed roof right up to the commencement of this suit in June of 1979. Looking to other documentary evidence, we find a contractors certificate of substantial completion signed by the architect, owner, and Component on June 14, 1977, which includes the following: "The Owner accepts the Work or designated portion thereof as substantially complete and will assume full possession thereof at 5:00 p.m. on June 8, 1977." Additionally, in such certificate it is stated the "designated portion" means "all work", and the architect certifies the construction to be "sufficiently complete, in accordance with the Contract Documents, so the Owner may occupy the Work or designated portion thereof for the use for which it is intended."

The record includes a copy of the check by which Component made its final payment to appellants. The check is dated November 21, 1977. On its back, above appellants' endorsement, appears language to the effect that by endorsing and negotiating the check, appellants specifically warranted as to the merchantability of materials, and the good and workmanlike manner of applying the roof. In addition, they indemnified Component against costs, losses, or judgments at the hand of the owners. Identical warranties and indemnification were spelled out in the transmittal letter accompanying the check, acceptance of which was required before appellants were authorized to cash the check.

■ The applicable version of the DTPA is the one in effect on the date of the acts which give rise to the cause of action under the DTPA. *See La Sara Grain v. First Nat. Bank of Mercedes,* 673 S.W.2d 558, 565 (Tex.1984); *Woods v. Littleton,* 554 S.W.2d 662, 666 (Tex.1977). The act which gives rise to a cause of action for breach of warranty is the *breach* of the warranty. *See McAllen State Bank v. Linbeck Const. Corp.,* 695 S.W.2d 10, 24 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.) and cases cited therein.

■ Since the defects in workmanship complained of in the instant case had been completed prior to the giving of the warranty on November 21, 1977, the breach of warranty occurred at the very time the warranty was given. *See Cocke v. White,* 697 S.W.2d 739, 744 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). We hold the 1977 version of the DTPA governs this action. Component, therefore, had standing to sue as a "consumer" under the 1977 version of the DTPA for both goods and services purchased for commercial or business use, and thus could maintain this action for appellants' alleged breach of their workmanship warranty, as well as for the alleged breach of the materials warranty.

Points of error three through eight are overruled.

Appellants allege error because of the absence of a jury finding that Component was a consumer under the DTPA in points of error nine through fourteen. Appellants refer us to our opinion in *Ridco Inc. v. Sexton,* 623 S.W.2d 792 (Tex.App.—Fort Worth 1981, no writ), wherein we wrote:

Ordinarily, the determinative question of whether or not the plaintiff is a consumer in a case such as this is one of law to be determined by the trial court from the evidence. This is so because the question of whether or not a person is a consumer under this act involves construction of sec. 17.45(4) of the statute, as it applies to each case. Of course, if some of the basic ingredients of the question of consumer are in dispute, those questions should be submitted to the jury.

*Id.* at 795.

■ Appellants then say "some of the basic ingredients of the question" were at

issue in this case, but fail to designate any such ingredient. Therefore, nothing is presented for review. Furthermore, since no objection was leveled at the court's charge because of the failure to submit the issue, and there is evidence to support a finding Component was a consumer, we must deem it found by the trial court. Thus, no error is shown. *See* TEX.R. CIV.P. 279; *Allen v. American National Insurance Company*, 380 S.W.2d 604, 609 (Tex.1964); *Prairie Cattle Co. v. Fletcher*, 610 S.W.2d 849, 854 (Tex.Civ.App.—Amarillo 1980, writ dism'd). Points of error nine through fourteen are overruled.

Appellants next question the application of the DTPA to a breach of express warranty absent a finding the warranty was made to induce the contract. In support of this contention, we are again referred to previous rulings of this court. It is true in *Thomas v. Atlas Foundation Co., Inc.*, 609 S.W.2d 302 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.) we held for a subcontractor to be liable to the owner in treble damages his deceptive act or policy must have induced the owner to contract with the general contractor. The version of the DTPA then in effect required a breach of warranty constitute the producing cause of actual damages. *See* TEX. BUS. & COM. CODE ANN. sec. 17.50 (Vernon Pamph. 1986).

■ Our holding in *Thomas* is not applicable to the instant case, however, since the statutory language of sec. 17.50 was amended by the 1977 version of the DTPA to read:

(a) A consumer may maintain an action if he has been adversely affected by any of the following:

. . . .

(2) breach of an express or implied warranty.

Act of May 23, 1977, ch. 216, sec. 5, 1977 Tex.Gen.Laws 603. We hold Component was adversely affected by the breach of appellants' express warranty and Compo-

nent was entitled to maintain this DTPA action. Point of error fifteen is overruled.

■ Appellants' points of error sixteen through nineteen are directed against the award of attorney's fees. It is claimed such award was improper because Component failed to plead and prove the notice required under former TEX. REV. CIV. STAT. ANN. art. 2226 [3] because there was a take-nothing judgment against Component as to the cause of action assigned to it by Colonial, and because of no evidence and insufficient evidence to show attorney's fees expended by Component in its claim against appellants.

It is pointed out the only evidence of attorney's fees concerned the following:

1. Fees paid by Colonial in its suit against Component.

2. Fees paid by Component to one law firm in defense of all lawsuits from 1977 to 1984.

3. Fees for services rendered by another firm which took over the case for trial.

Noting first the above statements in appellants' brief are not contradicted nor even addressed in Component's brief, we have examined the record and find it substantiates appellants' statements. The record is devoid of any evidence which would clearly differentiate fees incurred by Component beginning in 1977 "in the matter involving Colonial Southwest", including defending the lawsuit brought against it by Colonial, from the fees incident to Component's third party claim against appellants. Such failure to segregate the fees attributable solely to Components' DTPA recovery is fatal to recovery of those fees. In *Crow v. Central Soya Co., Inc.*, 651 S.W.2d 392 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e.) we wrote:

Although art. 2226 provides for an award of attorney's fees in suits such as this one . . . fees attributable to the defense of a counterclaim are not recoverable

---

**3.** *See* Act of April 21, 1953, ch. 67, sec. 1, 1953 Tex.Gen.Laws 101, *repealed by* Act of June 16, 1985, ch. 959, sec. 9, 1985 Tex.Gen.Laws 3242, 3322 (currently codified at TEX.PRAC. & REM. CODE 38.002(2) (Vernon 1985)).

unless the facts necessary for the plaintiff to recover also serve to defeat the counterclaim. *Wilkins v. Bain,* 615 S.W.2d 314 (Tex.Civ.App.—Dallas 1981, no writ).

*Id.* at 396.

We hold the rule should also apply to the necessity of segregating fees expended in defending against the original suit from fees expended in prosecuting a third party DTPA claim. The question then posed is whether the facts necessary for Component to recover from appellants also serve to defeat Colonial's cause of action against Component. We think not.

In the first place, it is clear from this record Component had available, as defenses, evidence of acts or omissions of others, including those of the owner, in addition to evidence of appellants' shortcomings. This is evident from the special issue inquiring if the jury found Component itself, or another of its subcontractors (other than appellants), or the owner to have been negligent with respect to:

1. installation of the decking on the addition;

2. tying the addition to the existing structure;

3. placing television antennae and guy wires on the completed roof;

4. installation of air conditioning equipment, vent stacks, and smoke stacks;

5. maintenance of the old roof on the existing structure.

The jury found there was negligence in each of the above aspects by some party other than appellants. It then apportioned 70% of the negligence to appellants and 30% to Component, other subcontractors, and the property owner. Under such circumstances, where it has been established as a fact that others besides appellants had some degree of culpability in causing the leak damage, it cannot be said that facts necessary to Component's recovery from appellants also serve to defeat Colonial's suit. Had Component been actively presenting all its defenses to Colonial's claim throughout the trial, we can only surmise what the comparative faults might have been, and it would be unrealistic to assume all of Component's legal expenses for investigation, preparation, and trial were incurred solely in pursuit of its claim against appellants. The special issue on attorney's fees went to the general inquiry as to "reasonable and necessary" attorney's fees through trial, and was not limited to the question of those hours spent on the prosecution of the DTPA claim against appellants.

There was also no evidence regarding the total hours spent on the prosecution of the DTPA claim, as segregated from the hours spent on the defense of the original suit brought by Colonial. These are the very factors by which we were constrained to hold in *Crow* that attorney's fees could not be recovered based upon the answer to the special issue as it was presented to the jury. Similarly, we hold the evidence and the jury's answer to the special issue here presented do not support the award of attorney's fees. Appellants' point of error nineteen is sustained as to the award of attorney's fees.

Points of error twenty through twenty-five present the contention it was error to allow Component to recover $12,000.00 as damages incurred in Component's settlement of Colonial's claim against it. Appellants argue such element of damages is improper because the sole basis upon which that award could be justified is Component's asserted cause of action in indemnity. There were no special issues given nor recovery had on the indemnity cause of action. Appellants also question the award because the jury finding in regard to the reasonable damages suffered by the settlement is immaterial, in view of the trial court's directed verdict that Colonial take nothing, thereby eliminating a recovery under the cause of action as assignee of Colonial.

 Component counters this argument by pointing out that, independent of the indemnity theory and assignee theory, it pled and proved breach of warranty as a

violation of the DTPA. In such cases the injured consumer is entitled to recover the greatest amount of actual damages he has alleged and by proof, established, to be "factually caused" by the defendant's conduct, including related and necessary expenses resulting therefrom. *Joseph v. PPG Industries, Inc.*, 674 S.W.2d 862, 866 (Tex.App.—Austin 1984, writ ref'd n.r.e.); *Hyder-Ingram Chevrolet, Inc. v. Kutach*, 612 S.W.2d 687, 689 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ). *See also Kish v. Van Note*, 692 S.W.2d 463, 466 (Tex.1985).

■ There was uncontroverted testimony as to the reasonableness of the settlement expense. It cannot be said the roofing contractor did not foresee and contemplate the general contractor became responsible to the owner for damages caused by leaks in the roof. We hold in this case the expense of negotiating a reasonable settlement with the owner is a proper item of the general contractor's actual damages under the DTPA.

■ As to the no evidence and insufficiency of evidence points directed against the judgment's inclusion of the $12,000.00 reasonable settlement element of damages, we must also find against appellants. Johnnie Benson testified there were 12 separate instances of significant rains which caused the roof to leak to the extent she had to monitor mopping and clean-up of water and the moving of patients out of rooms in which the ceilings were dangerous. Carpeting had to be replaced. These additional duties required of her, at her hourly rate of $25.00, cost Colonial $1,250.00. Lost use of rooms during rainy periods and while under rain damage repair was calculated to be $16,300.00. Replacement carpeting cost $2,000.00. Cleanup labor and extra laundry expenses were $216.00 and $96.00, respectively. Colonial's attorney's fees were $3,000.00.

In response to Special Issue No. 6, the jury found the following elements of Colonial's damages:

| | |
|---|---|
| Lost revenue from repair to rooms | $8,000.00 |
| Reasonable cost for laundry and cleanup | 312.00 |
| Reasonable administrative costs to monitor and control leaking | 500.00 |
| Reasonable cost to replace carpet | 2,000.00 |
| Reasonable and necessary attorney's fees | 3,000.00 |

We find the evidence to be legally and factually sufficient to support the finding that $12,000.00 was a reasonable sum to pay in settlement of the $13,812.00 jury-established liability. Points of error twenty through twenty-eight are overruled.

■ Points of error twenty-nine and thirty claim error in submitting special issue no. 7 in terms of comparative fault between the parties to apportion damages, and in failing to submit appellants' requested special issues. Special issue no. 7 and its answers follow:

What percentage of the actions or failures that proximately caused the damages to the nursing home do you find from a preponderance of the evidence is attributable to the actions or failures of the parties herein?

Answer by stating a percentage next to each. It must add up to 100%.

| | |
|---|---|
| E.O. WOOD COMPANY | 70% |
| COMPONENT CONSTR. CORP., its other subcontractors and the property owner | 30% |

In *Signal Oil and Gas v. Universal Oil Products*, 572 S.W.2d 320, 329 (Tex.1978), the Supreme Court held in a cause of action for breach of an implied warranty, the buyer may not recover consequential damages to the extent the buyer's negligence or fault was a concurring proximate cause of such damages.

[W]here both the unsuitable product and the buyer's negligence are found to be proximate causes of the damage, an additional determination must be made by the trier of fact: that being the respective percentages (totaling 100 percent) by which the concurring causes contributed to the consequential damages. As in *Hopkins*, [*General Motors Corp. v. Hopkins*, 548 S.W.2d 344 (Tex.1977)] this allocation of causation should not be confused with the statutory system of mod-

ified comparative negligence adopted in Texas. TEX.REV.CIV.STAT.ANN. art. 2212a. Unlike comparative negligence a buyer is entitled to recover that portion of the damages caused by the unsuitable product, even if the buyer's negligence or fault constitutes a greater cause of the damages than the seller's breach. *Signal Oil*, 572 S.W.2d at 329.

The rule of *Signal Oil*, an implied warranty case, was extended to apply to express warranties in *Indust-Ri-Chem Lab. v. Par-Pak Co., Inc.*, 602 S.W.2d 282 (Tex. Civ.App.—Dallas 1980, no writ). In that case the Dallas court stated, "[t]he proper method of submission of this question would be to inquire if the acts or omissions of the buyer occurred, if they were unreasonable under the circumstances, and what percentage of the buyer's damages were solely caused by his unreasonable use." *Id.* at 292.

Appellants urge the method of submission of the issue in the case before us was not in accord with the method suggested by the Dallas court, and was therefore erroneous. We first note the above quoted statement is dicta, since the court held as a matter of law there was no unreasonable act or omission on the part of the buyer. Consequently, in that case, no apportionment of proximate cause was required. Accordingly, we are not bound by such dicta, and we choose to determine if the method of submission employed by special issue no. 7 fairly and substantially comports with the Supreme Court's holding in *Signal Oil*. We do so find.

■ Appellants also claim the trial court should have submitted separate issues as to the respective damages caused by Component, the subcontractor who applied the decking for the roof, the subcontractor who installed air conditioning and heating equipment, and the subcontractor installing television antennae. It is claimed, without citation of authority, the inclusion of those questions into one issue "confused the jury and mixed theories of contract and tort." The individual acts or omissions attributable to the various parties were the subject of special issue no. 4, which stated:

(A) Do you find from a preponderance of the evidence that Component Construction Corporation or another of its subcontractors (other than E.O. Wood Company) or the owner of the nursing home was negligent with respect to: (i) installation of the decking on the addition; or (ii) tying the addition to the existing structure; or (iii) placing television antennae and guy wires on the completed roof; or (iv) installation of air conditioning equipment, vent stacks, and smoke stacks; or (v) maintenance of the old roof on the existing structure.

Answer "We do" or "We do not" for each element:

| | | |
|---|---|---|
| (i) | the decking? | WE DO |
| (ii) | tying-in? | WE DO |
| (iii) | television antennae? | WE DO |
| (iv) | air conditioning, et al? | WE DO |
| (v) | maintenance of old roof? | WE DO NOT |

If you answered any subpart of Part A, "We do," then answer Part B; otherwise, do not answer Part B.

(B) Do you find from a preponderance of the evidence that such actions were a proximate cause of roof leaks and resultant damage to the nursing home? Answer "We do" or "We do not."

ANSWER: WE DO

We hold the above special issue, coupled with special issue no. 7, was an adequate and fair presentation of appellants' claims that the other parties were at fault, including their claim the damages were caused by leaks in the existing roof, unaffected by the installation of the roof on the addition to the structure. Points of error twenty-nine through thirty-two are overruled.

■ Appellants next claim reversible error was committed when the court refused to permit Paul Gooden, a witness they called, to testify as an expert witness. Gooden did testify. However, at the beginning of his testimony, Component's counsel objected to any opinion testimony he might give as an expert because he had not been identified as an expert witness pursuant to

TEX.R.CIV.P. 166. The objection was sustained as to expert testimony only.

It has long been the rule, as stated in *Texas Emp. Ins. Ass'n v. Garza,* 557 S.W.2d 843, 847 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.), that;

> [W]hen tendered evidence is excluded, whether testimony of one's own witness on direct examination or testimony of the opponent's witness on cross-examination, in order to later complain it is necessary for the complainant to make an offer of proof on a bill of exception to show what the witness' testimony would have been. Otherwise there is nothing before the appellate court to show reversible error in the trial court's ruling. *Gulf Paving Co. v. Lofstedt,* 144 Tex. 17, 188 S.W.2d 155 (1945); *Rose v. Allied Finance Company of Oak Forest,* 487 S.W.2d 861 (Tex.Civ.App.—Waco 1972, no writ).

*Tex. Emp. Ins. Ass'n,* 557 S.W.2d at 847; *see also* TEX.R.CIV.P. 372. In the record before us, the testimony which would have been given by the witness is not preserved for review. Consequently, no reversible error is demonstrated. Points of error thirty-three through thirty-five are overruled.

In their final point of error, appellants question the award of $17,000.00 as attorney's fees through trial, in view of Component's request of only $15,500.00 attorney's fees in its petition. We will not address this point of error in view of our earlier disposition of the matter of attorney's fees.

That portion of the judgment below which awarded attorney's fees to appellees is reversed and rendered, and in all other respects the judgment is affirmed.