**STEWART TITLE GUARANTY COMPANY, Petitioner,**

v.

**W. Dawson STERLING, Trustee.**

No. C–8910.

Supreme Court of Texas.

Dec. 11, 1991.

Rehearing Overruled Feb. 12, 1992.

Eugene J. Pitman, Paul J. McConnell, III, C.M. Hudspeth, S. Bradley Todes, De Lange, Hudspeth & Pitman, Houston, James P. Wallace, Soules & Wallace, Austin, for petitioner.

Thomas T. Hutcheson, Roland M. Chamberlain, E. John Gorman, Rudy A. England, Hutcheson & Grundy, L.L.P., Houston, for respondent.

## OPINION

GONZALEZ, Justice.

The principal issue on which we focus in this case is whether a defendant who is found liable for violating Art. 21.21, § 16 of the Texas Insurance Code can reduce liability by setting off against the amount of damages the amount of a settlement entered into by co-defendants. The nonsettling defendant, Stewart Title Guaranty Company, sought a credit based on the "one satisfaction rule." This doctrine was first articulated in Texas in *Bradshaw v. Baylor University*, 84 S.W.2d 703, 705 (Tex.1935), and its purpose is to limit an injured party to a single satisfaction for one injury. The main issue here is whether the *Bradshaw* doctrine applies. The trial court refused to allow the credit, and the court of appeals affirmed the judgment of the trial court. 772 S.W.2d 242 (1989). The court of appeals reasoned that this court completely abrogated the one satisfaction rule in all cases with its decision in *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 434 (Tex.1984). We disagree, and therefore we reverse the judgment of the court of appeals and remand to the trial

court to render judgment consistent with this opinion.

## FACTS

In 1983, W. Dawson Sterling, a lawyer, real estate broker, and developer, purchased 173.7297 acres of land for $521,189 to develop a residential subdivision. He received $37,000 of the purchase price as a real estate commission. The seller, Equitable Life Assurance Society of the United States, obtained the property through an earlier foreclosure. Equitable's counsel was the firm of Butler & Binion. As part of the transaction, Sterling sought to acquire title to 1.38597 acres that comprised three improved homesites. Ownership of these lots was essential to ensure his ability to control the municipal utility district of the subdivision. Sterling, Equitable, and Butler & Binion were aware that the three improved homesites were occupied, but they erroneously assumed that Equitable was the owner.[1] Prior to closing, Sterling discovered that an earlier survey made for Equitable had excluded the 1.38597 acres. Sterling discussed this survey with an attorney at Butler & Binion who informed Sterling that the survey plat was incorrect and that the 1.38597 acres were included in the sale. Immediately before signing the closing documents, Sterling sought and obtained assurances from Equitable, Butler & Binion, and Stewart Title Guaranty Company that the three lots would be included in the transaction and that the survey was incorrect. Stewart Title's closing agent, Murray Camerson, stated that the owner's policy issued to Sterling would describe all of the land in the commitment. She also stated that the policy would guarantee good and indefeasible title to the property. A second attorney with Butler & Binion assured Sterling that "[a]s currently drawn the survey does not include three lots which are included within the property description of Lockshire II which will be attached to the deed. It is the complete description which will be insured by Stewart [Title]...." Additionally, Sterling testified that Equitable, Butler & Binion, and Stewart Title told him that Equitable owned the 1.38597 acres of occupied land. Both the title commitment and the title policy issued by Stewart Title contained a property description which included the three lots.

Sterling was required to sign a "Waiver of Inspection" at the closing which stated that Stewart Title's policy would except from coverage the rights of parties in possession, "the existence of which does not appear of record." The "Waiver of Inspection" provided as follows:

> I hereby waive inspection by you of such property and accept your policy subject to rights of parties in possession, and those under whom they hold, and to any visible and apparent roadway or easement over or across the subject property, the existence of which does not appear of record, if any such parties are not in possession of, or if any such roadway or easement affects the premises upon which you have issued such policy, and take it upon myself to inspect such premises and obtain possession thereof from the present occupants.

The title commitment Sterling previously received did not contain this clause. However, the policy actually issued by Stewart Title included the clause. The Owner's Policy issued to Sterling by Stewart Title provided:

> This Policy is subject to the Conditions and Stipulations hereof, the terms and conditions of the leases or easements insured, if any, shown in Schedule A, and to the following matters which are additional exceptions from the coverage of this Policy.... 24. Rights of parties in possession.

---

1. The persons in possession of the three lots obtained these lots by conveyances from prior owners. At the time of the transaction, Equitable and Butler & Binion were on notice that others owned the tracts in question. Before Equitable contracted with Sterling, someone else obtained a title commitment which excluded the three lots from coverage because there were outstanding deeds on them. At the time of this transaction, Stewart's own files contained several documents which reflected that individuals other than Equitable held title to the three lots.

**4**

Significantly, the qualifying language, "the existence of which does not appear of record," which was included in the waiver signed by Sterling, was omitted from the policy issued to him. At the closing, Sterling signed the waiver of inspection and accepted the title policy which also recited the exception.

## PROCEDURAL HISTORY

After Sterling learned that he did not have good title to the three lots, he asserted a claim under Stewart Title's policy. Stewart Title denied coverage on the basis that the owner's policy contained an exception for the rights of parties in possession. In 1983, Stewart Title filed a declaratory judgment action to determine Sterling's rights under the policy. In a separate suit, Sterling sued Stewart Title, Equitable, and Butler & Binion for, among other things, violations of the Insurance Code, violations of the Deceptive Trade Practices Act,[2] negligence, gross negligence, and fraud. Sterling alleged that he contracted with Equitable for the purchase of land including the area occupied when Equitable and Butler & Binion knew that this area had previously been conveyed to the occupants; and additionally, that Sterling relied upon the representations and promises of each of the defendants in closing the transaction and would otherwise not have purchased the property. Sterling alleged that he later learned that he did not acquire title to these lots; that the defendants conspired to cause Sterling to accept an inferior title; and that Stewart Title wrongfully denied liability under the policy. Sterling sought joint and several liability against all defendants. The two lawsuits were consolidated for trial.

Sometime after the jury trial began, Equitable and Butler & Binion settled with Sterling for $400,000 and were dismissed from the suit. The case proceeded to trial against Stewart Title and the jury found: 1) that Stewart Title knowingly engaged in improper trade practices;[3] 2) that these actions were the producing cause of damages to Sterling; and 3) that Sterling sustained $200,000 in actual and consequential damages.[4] Sterling elected to recover under Article 21.21, § 16 of the Insurance Code which provides that the actual damage award may be trebled upon a showing of liability.[5] Stewart Title attempted to invoke the "one satisfaction rule" of *Bradshaw*, and thus obtain a pre-trebling credit for the amount already paid to Sterling by the settling defendants. Stewart Title argued that Sterling already received $400,000 as compensation for damages of only $200,000. Therefore, a settlement credit would reduce the damage award against Stewart Title to $0 leaving nothing to treble. The trial court rejected Stewart Title's argument, denied any credit and rendered judgment for Sterling against Stewart Title for $1,028,372.60 ($200,000 trebled, plus prejudgment interest and attorney's fees).

---

**2.** Tex.Bus. & Com.Code § 17.41–.63 (hereinafter "DTPA").

**3.** The jury also found that *Stewart* Title knowingly engaged in unfair settlement practices. We need not address Stewart Title's challenges to this finding, because we conclude that the improper trade practices finding was sufficient for recovery.

**4.** Issue no. 9 was the damage issue. It stated:

What amount of money do you find from a preponderance of the evidence constitutes W. Dawson Sterling's actual damages, if any, that were produced by any deceptive trade practices, unconscionable action or course of action, unfair claims settlement practice, or improper trade practice, if any, found by you to have been committed by Stewart Title Guaranty Company?

Answer in dollars and cents, if any.
ANSWER: $200,000.00

The jury was instructed to consider the (1) "fair market value on July 15, 1983, of the property to which title failed" and (2) "any consequential damages which naturally resulted therefrom."

**5.** Because the suit was filed before the date upon which the amended Insurance Code art. 21.21, § 16 became effective, the pre-amendment version applies to this case. Act approved March 22, 1909, 31st Leg., R.S., 1909, art. 4954, ch. 108, 1909 Tex.Gen.Laws 192, 192, (1909), *amended by* Act approved May 17, 1929, 41st Leg., 1st C.S.1929, ch. 3, § 1, 1929 Tex.Gen.Laws 5, 5 (1929), *amended by*, Act approved April 4, 1985, 69th Leg., R.S.1985, ch. 22, § 3, 1985 Tex. Gen.Laws 395, 395 (current version at Tex.Ins. Code art. 21.21, § 16 (1991)).

The court of appeals affirmed the judgment of the trial court.

## ONE SATISFACTION RULE

At this time, Texas has four distinct contribution schemes—three based on statute and one created at common law. TEX. CIV. PRAC. & REM. CODE § 32.001 *et seq.* (1986) (the original contribution statute); former TEX. CIV. PRAC. & REM. CODE § 33.001 *et seq.* (1986), *amended by* Acts 1987, 70th Leg., 1st C.S., ch. 2, § 2.04 (the comparative negligence statute); TEX. CIV. PRAC. & REM. CODE § 33.001 *et seq.* (1991) (the comparative responsibility statute); *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 429 (Tex. 1984) (common law contribution by comparative causation). The applicable contribution scheme is determined by the theories of liability adjudged against the tortfeasors. *Beech Aircraft Corp. v. Jinkins,* 739 S.W.2d 19, 20 (Tex.1987).

The comparative negligence statute applies only in pure negligence cases filed before September 2, 1987. The *Duncan* comparative causation scheme applies only to products cases involving strict liability, breach of warranty, and mixed theories of strict liability and negligence tried after July 13, 1983. *Duncan,* 665 S.W.2d at 434. In 1987, the legislature enacted the comparative responsibility statute which merged the comparative negligence statute with the holdings of *Duncan.* TEX. CIV. PRAC. & REM. CODE § 33.001 *et seq.* (1991). The effective date of this new statute is September 2, 1987. Act of September 2, 1987, 70th Leg., 1st C.S., ch. 2, § 4.05, 1987 Tex. Gen.Laws 37, 51.

■ This case was filed before the effective date of the comparative responsibility statute; therefore, that statute is clearly inapplicable. Additionally, because the comparative negligence statute applies only to cases in which negligence is the only theory involved, the comparative negligence statute (former TEX.CIV.PRAC. & REM. CODE § 33.001) is inapplicable. Thus, the only two remaining options are the original contribution statute and *Duncan.*

■ Stewart Title alleges that it is entitled to an off-set from the settlement under the one satisfaction rule. This doctrine developed at common law from the interpretation and application of the original contribution statute. This common law development was necessary, because the statute did not address the implications of a partial settlement on contribution.

The primary case discussing the one satisfaction rule is *Bradshaw v. Baylor University.* In that case, Bradshaw sustained personal injuries when a Baylor University bus on which he was riding collided with a train. He settled for $6,500 with the railroad company and the suit continued against Baylor. The court rejected Bradshaw's efforts to obtain additional damages from Baylor and wrote:

> [W]hat right has Bradshaw, who has been fully compensated for his injuries, to recover further damages? The only answer which accords with justice and the authorities is that he has none. The jury found that $6,500, if paid at the date of trial, would compensate him for the injuries sustained. He had theretofore been paid that exact amount. It is a rule of general acceptation that an injured party is entitled to but one satisfaction for the injuries sustained by him. That rule is in no sense modified by the circumstance that more than one wrongdoer contributed to bring about his injuries. There being but one injury, there can, in justice, be but one satisfaction for that injury.

84 S.W.2d at 705.

The court of appeals and the dissent submit that *Bradshaw* was inapplicable to all cases in light of the decision in *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 434 (Tex.1984). However, as noted by the dissent, *Duncan* merely overruled *Bradshaw* "to the extent it conflicts with this opinion...." *Duncan,* 665 S.W.2d at 432.

It is necessary to remember that *Duncan* and the original contribution statute are two distinct schemes developed to address liability between tortfeasors. *See Jinkins,* 739 S.W.2d at 20. Although the applicability of the original contribution

statute has been limited by both the enactment of former TEX.CIV.PRAC. & REM.CODE § 33.001 *et seq.* and the development of *Duncan*, it is still viable.[6]

The court of appeals stated that *Duncan* rejected the one satisfaction rule. In fact, *Duncan* did not abolish the one satisfaction rule but merely modified the method in which the rule would apply to specific cases. In *Duncan*, we created a comparative causation scheme for product liability suits. 665 S.W.2d at 429. This court noted that the "... legislature's decision to limit [Chap. 33] to negligence cases does not ... preclude this court from fashioning a common law comparative apportionment system for strict products liability cases." *Id.* at 427. The *Duncan* court stated that "in cases not controlled by [the statutory comparative negligence scheme], the system we adopt will allow comparison of plaintiff's conduct, whether it is characterized as assumption of risk, misuse, or failure to mitigate or avoid damages, with the conduct or product of a defendant, whether the suit combines crashworthiness or other theories of strict products liability, breach of warranty, or negligence." *Id.* at 428. Therefore, instead of the dollar for dollar credit as set forth in *Bradshaw*, the result of the one satisfaction rule is achieved by a percentage of causation allocation for those cases involving strict products liability and breach of warranty.

In *Duncan*, we did not authorize double recovery. Rather, we observed that the problem of double recovery can be avoided when comparative fault issues are submitted against a nonsettling defendant. Because there is no comparative fault allocation for intentional torts, the problem of double recovery remains, and thus principles of equity demand some form of damage adjustment mechanism. There is no reason we should allow a windfall double recovery in cases involving multiple defendants when double recovery is clearly prohibited against a single defendant. *See Mayo v. John Hancock Mut. Life Ins. Co.*, 711 S.W.2d 5, 7 (Tex.1986); *see also American Baler Co. v. SRS Systems, Inc.*, 748 S.W.2d 243, 246 (Tex.App.—Houston [1st Dist.] 1988, writ denied) (explaining *Mayo*).

In *Jinkins*, this court recognized the continued viability of the original contribution statute following the *Duncan* decision by stating that "any remaining tort actions not covered by [*Duncan*] or the comparative negligence statute are the domain of the original contribution statute." *Jinkins*, 739 S.W.2d at 20.[7] Because this case involves a tort not within the scope of former TEX.CIV.PRAC. & REM.CODE § 33.001 *et seq.* or *Duncan*, the original contribution statute and its judicial history of application and interpretation is applicable. *Jinkins*, 739 S.W.2d at 20. Thus, the application of the one satisfaction rule as developed under the original contribution statute is appropriately applied to this case.[8]

---

**6.** The enactment of former TEX.CIV.PRAC. & REM.CODE § 33.001 *et seq.* restricted the application of the original contribution statute by removing cases involving only negligence from its scope. *Duncan* also restricted the original contribution statute's application by establishing a comparative causation scheme for all products cases where a defendant is found liable on the basis of strict products liability, breach of warranty, and mixed theories of products liability and negligence. *Duncan*, 665 S.W.2d at 430.

**7.** It should be noted that the recent tort reform legislation did not effect the original contribution statute. Therefore, the original contribution statute and its 70 year judicial application and interpretation remains valid for all torts outside of the scope of the other contribution schemes. Additionally, the new contribution legislation did not expand the underlying theory of *Duncan* to all torts. The statute specifically exempts from its scope suits based on the DTPA,

the Insurance Code and intentional torts. TEX. CIV.PRAC. & REM.CODE § 33.002(a), (b)(2) and (b)(3). Therefore, even under the most recent legislative enactments in tort reform, these exempted theories of liability are subject to the application of the original contribution statute.

**8.** Additionally, following the *Duncan* decision, this court acknowledged that the application of the one satisfaction rule is still viable in *Ojeda de Toca v. Wise*, 748 S.W.2d 449, 451 (Tex.1988). In *Wise*, the court granted a writ to determine whether constructive notice under the real property recording statutes operates as a defense to a buyer's action for damages under the DTPA. The plaintiff purchased a house which was demolished by the City of Houston pursuant to an order previously filed in the county deed records. The buyer sued the seller under the DTPA, as well as for fraud and negligence. She

## SINGLE INJURY

■ The one satisfaction rule applies to prevent a plaintiff from obtaining more than one recovery for the same injury. Appellate courts have applied the one satisfaction rule when the defendants commit the same act as well as when defendants commit technically differing acts which result in a single injury. In 1988, an appellate court decision held that in an action under the DTPA, a plaintiff was not allowed to obtain a double recovery for actual damages. *American Baler Co. v. SRS Systems, Inc.*, 748 S.W.2d 243, 246 (Tex.App.—Houston [1st Dist.] 1988, writ denied). In *SRS*, the plaintiff sued multiple defendants for fraud, breach of contract, negligent misrepresentation, and DTPA violations relating to the purchase and/or installation of a baler and conveyor. The jury determined damages regarding each defendant under each cause of action. The trial court refused a request by the defendants that the plaintiff elect a remedy. On appeal, the defendants argued that the damage award, which allowed recovery under each of the four causes of action, resulted in a multiple recovery of actual damages. The plaintiff argued that each cause of action was the result of a "different act," and thus the plaintiff could recover fully for each wrongful act. The appellate court held that all of the causes, of action were based upon misrepresentations connected to the sale of the equipment, and thus they were based upon the same wrongful act. The appellate court applied this court's decision in *Mayo v. John Hancock Mutual Life Ins. Co.*, 711 S.W.2d 5, 7 (Tex.1986), and concluded that because *Mayo* prohibited double recovery even when different acts were involved, the plaintiffs could not doubly recover for actual damages caused by the same misrepresentations.

In the case at bar, the court of appeals reasoned that Sterling could obtain additional damages from Stewart Title for acts and misrepresentations violating Article 21.21 of the Insurance Code because "neither the seller, nor its legal counsel, could have committed such violations. Any fraud or misrepresentation that might have been committed by the settling defendants concerning the sale of the property is a distinct injury from the one resulting from Stewart's misrepresentation concerning its insurance policy." 772 S.W.2d at 248. We disagree. As in this case, *Ojeda de Toca v. Wise*, 748 S.W.2d 449, 451 (Tex.1988), involved multiple defendants. In *Wise*, the title insurance companies settled while the seller continued to trial. This court treated the acts of all the defendants in *Wise* as causing a single injury and did not preclude the nonsettling defendant from obtaining a credit based on the prior settlement. The credit could be allowed even though the nonsettling defendant could not have committed the same acts as the settling defendants because it was not an insurance company. The wrongful conduct of all defendants in *Wise* involved fraud and misrepresentation. Similarly, the case at bar involves a settling seller and a nonsettling insurer. The result is that Sterling suffered only one injury and the actions of Stewart Title did not cause a distinct injury to Sterling apart from the seller's acts. Under similar circumstances in *Wise*, we said that the nonsettling defendants had a right to request a credit for the title insurance companies' settlement. Although not mentioning *Bradshaw*, we applied the rationale of the one satisfaction rule.

In *Wise*, the buyer suffered one injury, i.e., the destruction of her home. This was an indivisible injury and was caused by both the settling and the nonsettling defendants. Therefore, the court recognized the

also sued two title insurance companies with whom she settled after the application for writ of error was filed. The trial court rendered judgment for the buyer. The court of appeals reversed, concluding that the recording of the City's demolition order provided constructive notice and constituted a defense as a matter of law to the buyer's DTPA and fraud claims. We reversed and remanded holding that the record-

ing of the City's demolition order did not relieve the seller from liability under the DTPA or for fraud. We also stated:

> [O]ur judgment is without prejudice to the right of [seller defendant], on remand, to request a credit based on the amount of [plaintiff's] settlement with [the settling defendants].

748 S.W.2d at 451.

ability of the nonsettling defendant to obtain a credit based on the settlement. Sterling suffered only one injury, namely, his failure to obtain ownership of the three lots. This was an indivisible injury caused by both the settling and nonsettling defendants. There can be but one recovery for one injury, and the fact that more than one defendant may have caused the injury or that there may be more than one theory of liability, does not modify this rule.

In this case, Sterling purchased land under the belief that he was obtaining title to the three water district lots. The settling defendants misrepresented to Sterling that he would receive good title to these lots. Likewise, Stewart Title's agent misrepresented to Sterling that he would obtain title to the lots. These acts constitute a single indivisible harm to Sterling. Stewart Title's conduct gave rise to the same damages that Sterling sought from the other defendants, i.e., the value of the three water district lots. There is no rational basis to distinguish between the damages Sterling suffered from Stewart Title's failure to pay on the policy and the damages suffered from the alleged misrepresentations of all of the defendants. All tortfeasors, whom Sterling himself alleged were *joint* tortfeasors, caused the same damage. We therefore hold that Stewart Title is entitled to receive a credit on the judgment, because otherwise Sterling would receive a double recovery.

### PRE–TREBLING OR POST–TREBLING CREDIT

■ Given our decision that the one satisfaction rule applies to this case, we must decide whether the credit is applied pre- or post-trebling. Stewart Title argues that it is entitled to the credit prior to the application of the trebling provision in Article 21.21, § 16 of the Insurance Code. Stewart Title reasons that its liability is extinguished because the jury found actual damages of $200,000 and Sterling received $400,000 in settlement. If the credit is applied prior to trebling, the actual damage award is reduced to zero, thereby relieving Stewart Title of any liability.[9] This is a case of first impression as this issue relates to the treble damage provision of Insurance Code Article 21.21, § 16.

Stewart Title relies on *Smith v. Baldwin*, 611 S.W.2d 611, 617 (Tex.1980) to support its argument that the credit should be applied pre-trebling. In *Smith*, Baldwin contracted to build a house for Smith. Smith moved into the house before it was completed and a dispute arose between them. Smith ordered Baldwin to leave the premises and Baldwin sued Smith for foreclosure of his lien. Smith filed a general denial and counterclaimed under the DTPA. The trial court rendered a take-nothing judgment for Baldwin but awarded Smith $4,400 in actual damages (in addition to attorney's fees) under the DTPA. Because Smith was residing in the home throughout the dispute, Baldwin requested a credit against the damage award. The trial court refused to allow a credit but this court held that the reasonable rental value should be used to offset the award of actual damages *prior to trebling*. *Smith* is not analogous to this case because *Smith* involved a credit directly between the non-settling defendant and the plaintiff for money which was owed directly to the non-settling defendant. *Smith* did not involve an offset from an earlier settlement of a co-defendant but an offset due to the rental value benefit received directly by Smith.

Three cases have dealt with the pre-trebling/post-trebling credit issue in a DTPA context. *See Reed v. Israel Nat'l Oil Co. Ltd.*, 681 S.W.2d 228, 240 (Tex.App.—Hous-

9. The consequences of pre-trebling and post-trebling in this case are as follows:

PRE–TREBLING
| | |
|---|---|
| Actual Damages | $200,000 |
| Less: Settlement Credit | <$400,000> |
| NET DAMAGES | -0- |

POST–TREBLING
| | |
|---|---|
| Actual Damages ($200,000) × 3 | $600,000 |
| Less: Settlement Credit | <$400,000> |
| NET DAMAGES | $200,000 |

ton [1st Dist.] 1984, no writ); *Stendebach v. Campbell*, 665 S.W.2d 557, 559 (Tex. App.—El Paso 1984, writ ref'd n.r.e.); *Providence Hosp. v. Truly*, 611 S.W.2d 127, 136 (Tex.Civ.App.—Waco 1980, writ dism'd). Each of these decisions concluded that applying the credit prior to trebling denies the injured plaintiff the full award required by the DTPA, frustrates the legislative intent to punish and deter such violations, and discourages settlements. We view the cases as being analogous to the case before us today and we agree with their reasoning.

It is self-evident that the treble damages provision of Article 21.21, § 16 is punitive in nature and designed to deter violations of the Insurance Code. Under the pre-1985 version of Article 21.21, which is applicable to this case, trebling was mandatory based merely upon the determination of liability. *See Rainey–Mapes v. Queen Charters, Inc.*, 729 S.W.2d 907, 915 (Tex. App.—San Antonio 1987, writ granted and dism'd as moot); *Hope v. Allstate Ins. Co.*, 719 S.W.2d 634, 635–36 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.). Scienter was not required to trigger the trebling provision. These factors clearly establish the punitive intent of the provision; therefore, application of the credit prior to trebling would frustrate this legislative purpose. Additionally, a pre-trebling credit will discourage settlements. This court seeks to promote a public policy that encourages settlements. By allowing a pre-trebling credit after fault is found, a recalcitrant nonsettling defendant would unjustly reap a windfall from the settlements made by other settling defendants. Thus, we hold that any credit for settlements made by other alleged joint tortfeasors must be applied after the trebling of actual

damages as provided for by Insurance Code Article 21.21, § 16.[10]

An additional rationale supporting a post-trebling credit is found by analyzing the one satisfaction rule another way. There are two questions to be addressed. The first is whether there are any actual damages, and the second is whether these actual damages are recoverable by the plaintiff. The jury found actual damages of $200,000. Merely because actual damages are established by the jury does not necessarily mean that the plaintiff may recover them. The Insurance Code provides for the trebling of actual damages, not for the trebling of recoverable damages. Therefore, by allowing a post-trebling credit, the punitive nature of the trebling provision is given full effect and the application of the one satisfaction rule is consistently applied. Our holding that any credit for settlements made by other alleged tortfeasors must be applied after the trebling of actual damages is consistent with the well-settled rule in federal antitrust cases which involve treble damages. *See, e.g., Sciambra v. Graham News Co.*, 841 F.2d 651, 657 (5th Cir.1988), *cert. denied sub nom. Sciambra v. ARA Services, Inc.*, 488 U.S. 855, 109 S.Ct. 143, 102 L.Ed.2d 115 (1988); *Hydrolevel Corp. v. American Soc'y of Mechanical Eng'rs, Inc.* 635 F.2d 118, 130 (2d Cir. 1980), *aff'd on other grounds*, 456 U.S. 556, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982); *Flintkote Co. v. Lysfford*, 246 F.2d 368, 397–398 (9th Cir.1957), *cert. denied*, 355 U.S. 835, 78 S.Ct. 54, 2 L.Ed.2d 46 (1957); *see also, Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1310 (7th Cir.1987), *cert. denied*, 492 U.S. 917, 109 S.Ct. 3241, 106 L.Ed.2d 588 (1989) (civil RICO).

## THE CREDIT AMOUNT

Another issue regarding the right of Stewart Title to a post-trebling credit is

10. In its brief Stewart Title argues that if we hold that the credit is to be applied post-trebling, then it wants to change its election and receive the pro rata reduction provided by *Palestine Contractors, Inc. v. Perkins*, 386 S.W.2d 764 (Tex.1964). However, Stewart fails to realize that the pro rata reduction cannot be obtained unless the nonsettling defendant requests jury findings fixing the liability of the settling

defendants. *See Leong v. Wright*, 478 S.W.2d 839, 845 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.). Such findings are not required when only the credit is sought. *See Schering Corp. v. Giesecke*, 589 S.W.2d 516, 519 (Tex.Civ.App.—Eastland 1979, writ ref'd n.r.e.). Stewart Title did not request such finding.

the determination of the amount of the credit. The one satisfaction rule operates to prevent a plaintiff from recovering from a nonsettling tortfeasor if a settlement entered into before trial is greater than or equal to the amount awarded by the trier of fact. In *Schering Corp. v. Giesecke*, 589 S.W.2d 516, 519 (Tex.Civ.App.—Eastland 1979, writ ref'd n.r.e.), Schering asserted on appeal that the one recovery rule entitled him to a credit for the pretrial settlement entered into between Giesecke and another defendant. The trial court awarded a $200,000 judgment and refused to allow any credit from a pretrial settlement of $265,000. *Id.* at 518. The appellate court allowed a credit of the full settlement amount and held that "a non-settling tortfeasor is entitled to a credit for the amount paid the injured plaintiff in compensation of a claim for an injury...." *Id.* at 519. We agree with the rationale used in *Schering;* therefore, Stewart Title is entitled to a credit of $400,000.[11] All cases holding contrary to this opinion are disapproved.[12]

### ATTORNEY'S FEES

Over Stewart Title's objection, the trial court submitted an issue on attorney's fees and the jury awarded reasonable attorney's fees to Sterling. Stewart Title attempted to object to the submission on the ground that Sterling failed to segregate attorney's fees according to the amounts expended in prosecuting the suit against each defendant. The court of appeals held that Stewart Title's objection was untimely and imprecise in that it did not attack the propriety of the issue submission. We disagree. Stewart Title objected to special issue number 12, the issue on attorney's fees, by stating:

*[T]here has been no breakdown or allocation* to the—of the fees incurred in connection with this defendant, as well as numerous other defendants, *in order to show what is allocable as a reasonable amount for the prosecution of the suit against this defendant.* (emphasis added).

This objection was sufficient to preserve error.

As a general rule, the party seeking to recover attorney's fees carries the burden of proof. *See, e.g., Kimbrough v. Fox*, 631 S.W.2d 606, 609 (Tex.App.—Fort Worth 1982, no writ); *Corpus Christi Dev. Corp. v. Carlton*, 644 S.W.2d 521, 523 (Tex. App.—Corpus Christi 1982, no writ); *Bavarian Autohaus, Inc. v. Holland*, 570 S.W.2d 110, 116 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ). Although courts should consider several factors when awarding attorney's fees, a short hand version of these considerations is that the trial court may award those fees that are "reasonable and necessary" for the prosecution of the suit. *See, e.g., Green Tree Acceptance, Inc. v. Pierce*, 768 S.W.2d 416, 425 (Tex.App.—Tyler 1989, no writ); *Flint & Assoc. v. Intercontinental Pipe & Steel, Inc.*, 739 S.W.2d 622, 624 (Tex.App.—Dallas 1987, writ denied); *Rosas v. Bursey*, 724 S.W.2d 402, 410–11 (Tex.App.—Fort Worth 1986, no writ); *Graves v. Sommerfeld*, 618 S.W.2d 952, 954–55 (Tex.Civ. App.—Waco 1981, writ ref'd n.r.e.). In this case, § 16 of Article 21.21 permits the plaintiff to recover only those fees that are "reasonable in relation to the amount of work expended...."

In order to show the reasonableness and necessity of attorney's fees, the plaintiff is required to show that the fees were incurred while suing the defendant sought to be charged with the fees on a claim which allows recovery of such fees. When a plaintiff seeks to recover attorney's fees in cases where there are multiple defendants, and one or more of those defendants have made settlements, the

---

11. *See also Ratner v. Sioux Natural Gas Corp.,* 719 F.2d 801 (5th Cir.1983) (In allowing a credit of the full settlement amount in a case decided under the one satisfaction rule where the damage award included punitive and compensatory damages, the court stated that the goals of punishment and deterrence are served if the settlement satisfies both the compensatory and the punitive damages awarded to the plaintiff).

12. *See e.g., Providence Hospital v. Truly,* 611 S.W.2d 127 (Tex.Civ.App.—Waco 1980, writ dism'd).

plaintiff must segregate the fees owed by the remaining defendants from those owed by the settling defendants so that the remaining defendants are not charged fees for which they are not responsible. *See Wood v. Component Constr. Corp.*, 722 S.W.2d 439, 444–45 (Tex.App.—Fort Worth 1986, no writ); *Verette v. Travelers Indem. Co.*, 645 S.W.2d 562, 568 (Tex.App.—San Antonio 1982, writ ref'd n.r.e.); *Stone v. Lawyers Title Ins. Corp.*, 537 S.W.2d 55, 63–64 (Tex.Civ.App.—Corpus Christi 1976), *rev'd in part on other grounds*, 554 S.W.2d 183 (Tex.1977).

██ If a party refuses, over objection, to offer evidence segregating attorney's fees among various claims or parties, and an appellate court determines that segregation was required, the cases do not agree on whether judgment should be rendered awarding no attorney's fees at all, or whether the case should be remanded for more evidence on the issue. The rationale for rendition is that evidence on total attorney's fees without segregation is no evidence of segregated attorney's fees, and consequently rendition is required. *Wood*, 722 S.W.2d at 444 (failure to segregate is "fatal to recovery of [attorney] fees," requiring rendition of judgment); *Verette*, 645 S.W.2d at 568 (affirmed trial court's refusal to submit attorney's fees to jury in absence of evidence segregating fees); *American Nat'l Bank & Trust Co. v. First Wisconsin Mortgage Trust*, 577 S.W.2d 312, 320 (Tex.Civ.App.—Beaumont 1979, writ ref'd n.r.e.) ("[u]ntil and unless [plaintiff] segregated its attorney's fees, it offered no evidence supporting an allowance thereof.").

This court, however, has held that an award of attorney's fees erroneously based upon evidence of unsegregated fees requires a remand. *International Security Life Ins. Co. v. Finck*, 496 S.W.2d 544, 546–547 (Tex.1973). *Finck* states:

During the trial the parties stipulated that the insured was entitled to recover $320 under the insurance policy which formed the basis of this suit, plus penalty and interest. The special issue properly limited the jurors' consideration to attorney fees for the collection of the claim under the insurance policy, however, all the evidence submitted to the jury had to do with the attorneys' services in preparing the case pertaining to the alleged fraud and deceit cause of action, and not upon the claim under the insurance policy. We therefore conclude there is no evidence to support the jury finding [of $2,500 attorney fees].

... The judgments awarding attorney fees are reversed. The claim is severed and remanded to the trial court for a hearing to determine the attorney fees which are recoverable for services rendered to collect benefits accrued on account of the insurance policy.

*See also Marcotte v. American Motorists Ins. Co.*, 709 F.2d 378, 381 (5th Cir.1983) (follows *Finck*, granting a hearing to determine which fees were recoverable); *Modine Mfg. Co. v. North East Indep. School Dist.*, 503 S.W.2d 833, 845 (Tex.Civ.App.—Beaumont 1973, writ ref'd n.r.e.) (follows *Finck*, stating that upon remand the party should present evidence that segregates attorney's fees). All cases to the contrary are disapproved.[13]

██ A recognized exception to this duty to segregate arises when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their "prosecution or defense entails proof or denial of essentially the same facts." *Flint & Assoc. v. Intercontinental Pipe & Steel, Inc.*, 739 S.W.2d 622, 624–25 (Tex.App.—Dallas 1987, writ denied). Therefore, when the causes of action involved in the suit are dependent upon the same set of facts or circumstances and thus are "interwined to the point of being inseparable," the party suing for attorney's fees may recover the entire amount covering all claims. *Gill Sav. Ass'n v. Chair King, Inc.*, 783 S.W.2d

---

13. *See, e.g., Wood v. Component Constr. Corp.*, 722 S.W.2d 439 (Tex.App.—Fort Worth 1986, no writ); *Verette v. Travelers Indem. Co.*, 645 S.W.2d 562 (Tex.App.—San Antonio 1982, writ ref'd n.r.e.); *American Nat'l Bank & Trust v. First Wisconsin Mortgage Trust*, 577 S.W.2d 312 (Tex.Civ.App.—Beaumont 1979, writ ref'd n.r.e.).

674, 680 (Tex.App.—Houston [14th Dist.] 1989), *modified,* 797 S.W.2d 31 (Tex.1990) (remanded to the trial court for reexamination of attorney's fee award). Following a review of the record, we conclude that the attorney's fees are capable of segregation. Sterling's expert testified that some of the fees incurred were "primarily related" to one defendant rather than to both and that a "large majority" of the fees were incurred as a result of "fighting" Butler & Binion and Equitable.

Evidence of unsegregated attorney's fees is more than a scintilla of evidence of segregated attorney's fees, i.e. what a reasonable attorney's fee would be for the entire case indicates what the segregated amounts should be. The determination of reasonable attorney's fees is a question for the trier of fact. *See Gonzalez v. Nielson,* 770 S.W.2d 99, 102 (Tex.App.—Corpus Christi 1989, writ denied). Therefore a remand of the attorney's fee issue to the trial court for further consideration is appropriate.

## SUMMARY

We hold that the *Bradshaw* one satisfaction rule is applicable to cases not covered by a comparative causation scheme and that any credit for settlements made by other alleged joint tortfeasors must be applied after the trebling of actual damages. The application of the one satisfaction rule to the facts of this case results in the nonsettling defendant's ability to obtain a credit due to the plaintiff's settlement with the co-defendants. Therefore, Stewart Title is entitled to a $400,000 post-trebling credit resulting in a $200,000 judgment plus prejudgment interest for Sterling. Since the trial court awarded prejudgment interest on a $600,000 judgment, this cause is remanded to the trial court for entry of judgment consistent with this opinion.

We also hold that Stewart Title's objection was sufficient to preserve error regarding the segregation of attorney's fees and that the attorney's fees are capable of segregation. We thus reverse the judgment of the court of appeals and remand this cause to the trial court to recalculate Sterling's damages and prejudgment interest and for further consideration of the attorney's fees issue consistent with this opinion.

Dissenting Opinion by DOGGETT, J., joined by MAUZY and GAMMAGE, JJ.

DOGGETT, Justice, dissenting.

The court's growing fear that victims of injustice will get too much justice causes it to confer a windfall to wrongdoers. Today's opinion not only unjustly enriches those who violate the law, but also provides them with an incentive to make litigation as prolonged and difficult as possible. To accomplish this unfortunate result, the court rejects both the widely accepted majority rule and its own landmark holding in *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414 (Tex.1984).

Despite a jury finding that it knowingly violated Insurance Code article 21.21 through unfair settlement practices and improper trade practices, Stewart Title is today permitted to avoid payment of $400,000 of the $600,000 that it owes. This rather handsome reward for litigiousness conveys a message of permissiveness to those who disregard our laws—if you wait long enough and fight hard enough you can get off for thirty-three cents on the dollar of the amount a jury determines you owe.

Visiting the graveyard of abandoned legal precedents, the court today mystically revives the corpse of *Bradshaw v. Baylor University,* 126 Tex. 99, 84 S.W.2d 703 (Tex.1935), and the one recovery rule it embodied. We had previously pronounced *Bradshaw* dead in determining that "[t]he reasoning behind the one recovery rule no longer applies." *Duncan,* 665 S.W.2d at 431, and concluding that "to the extent it conflicts with this opinion, we overrule *Bradshaw v. Baylor University." Id.* at 432. Now this court has awakened yet another dead tort principle to roam the land, terrorizing victims. As in *The Night of the Living Dead,* an unthinking zombie is raised to prey on the living. When this court has resurrected enough of these monsters, the landscape of tort law will be bleak indeed, and let the victims beware.

The one recovery rule of *Bradshaw* is dead, and because I prefer to let the dead rest in peace, I dissent.

In *Duncan*, aware that *Cypress Creek Utility Serv. Co. v. Muller*, 640 S.W.2d 860 (Tex.1982), reserved the question of "how does the *Bradshaw* one recovery rule apply in cases not controlled by Art. 2212a [providing for comparative fault in negligence cases]?", *Duncan*, 665 S.W.2d at 430, we proceeded to provide an answer, thereby resolving the very issue presented today:

> We hold that in multiple defendant cases in which grounds of recovery other than negligence are established, the non-settling defendants' liability and the plaintiff's recovery shall be reduced by the percent share of causation assigned to the settling tortfeasor by the trier of fact.

665 S.W.2d at 429.[1] This writing was unequivocal and spoke broadly:

> The term "tortfeasor" includes those whose liability is based on strict products liability, breach of warranty, and negligence.

665 S.W.2d at 430. Both the holding and the reasoning of *Duncan* certainly apply to any intentional, knowing or wilful tort, and particularly any statutory tort, such as Stewart Title's unfair settlement practice and improper trade practice.

As noted in a thoughtful and thorough commentary on this complex subject, *Duncan* overruled *Bradshaw* "without reservation." Russell H. McMains, *Contribution and Indemnity Problems in Texas Multi-Party Litigation*, 17 St. Mary's L.J. 653, 661 (1986) (hereinafter McMains). Treating our recent writing as a comment limited to products liability litigation, see page 6, contradicts our clear, direct, and controlling rejection of the very premise underlying the one recovery rule for *any* case. Today's contorted reading further conflicts with the repeated interpretation of *Duncan* by other courts. In addition to the court of appeals decision here, 772 S.W.2d 242, 248, see *Mobil Chemical Co. v. Blount Bros. Corp.*, 809 F.2d 1175, 1180 (5th Cir.1987) ("We doubt the 'one satisfaction' rule can withstand the rule of *Duncan* in any context, tort or contract."); *Merit Drilling Co. v. Honish*, 715 S.W.2d 87, 89 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.) (*Bradshaw's* one recovery rule survived *Duncan* only to the extent it was already embodied in former article 2212a).

In an attempt to justify disregarding *Duncan*, the court offers our writing in *Ojeda de Toca v. Wise*, 748 S.W.2d 449 (Tex.1988), which never mentions the one recovery rule.[2] That case is particularly inapplicable, since the parties never raised or briefed the issue of a credit, and since settlement occurred not pretrial but pending appeal to this court.[3]

The old belief in the indivisibility of every tortious injury produced a number of harsh doctrines, including not only the concept of one satisfaction, but also the complete bar on contribution, non-apportionment of damages among tortfeasors, and contributory negligence as a total bar to a victim's recovery. Like the one recovery rule, these doctrines have been discredited and rejected. *See Dobson v. Camden*, 705 F.2d 759, 767 (5th Cir.1983), *vacated on rehearing on other grounds*, 725 F.2d 1003, 1004 (1984) (en banc); *see also* W. Page Keeton, Dan B. Dobbs, Robert E. Keeton & David G. Owen, *Prosser and*

---

1. The exclusion of actions based upon negligence results from their inclusion under former article 2212a, Act of March 22, 1973, 63rd Leg., R.S., ch. 28, § 1, 1973 Tex.Gen.Laws 41 (codified at Tex.Civ.Prac. & Rem.Code § 33.001–33.012) (comparative contribution in negligence cases according to percentage of fault). *Duncan*, 665 S.W.2d at 429.

2. Although *Wise* does mention that the defendant may on remand request a credit based on a settlement with third parties, 748 S.W.2d at 451, it did not hold that such a credit was proper or would be granted, but simply declined to consider the issue at that stage in the proceedings. Since *Duncan* does . t foreclose the possibility of receiving a percentage credit relative to comparative fault, *Wise* properly noted that a credit might be appropriate, not that a dollar-for-dollar credit would apply.

3. Because the *Wise* settlement took place after trial while the case was pending further appeal, this court in granting dismissal as to the settling parties sought only to preserve any pre-existing rights on remand.

*Keeton on the Law of Torts* 470 (W. Page Keeton, ed., 5th ed. 1984) (hereinafter *Prosser & Keeton*) (discussing the historical perspective on the divisibility of injury).

With the advent of the twentieth century, courts increasingly began to realize that even when an injury is indivisible, liability can, and should, be apportioned. *Robertson v. Trammell*, 83 S.W. 258 (Tex. Civ.App.—1904, writ ref'd) (release given for partial satisfaction does not release other tortfeasors); *McMillen v. Klingensmith*, 467 S.W.2d 193, 195 (Tex.1971) ("The legal basis for the unity of release has been challenged by every legal scholar who has examined it."). As Prosser and Keeton conclude, "the principal of comparative fault apportionment of damages is veritably sweeping the land...." *Prosser & Keeton* at 479. While not all injuries may be divisible, *fault* is generally divisible. *Id.* 470–71.

In *Duncan* we recognized that the one satisfaction concept is no longer viable because comparative causation "allows allocation of liability between the parties, even when the injury itself is indivisible." 665 S.W.2d at 431. The "crude headcounting" approach of the one recovery rule was appropriately replaced with "a more refined percent allocation of liability." *Id.* at 430.[4] Since credit based on the entire amount paid by a settling party regardless of fault, or a "dollar-for-dollar credit," ignores the very concept of comparative fault, it has been rejected by jurisdictions across the country. Today Texas has moved away from the well established majority preference for determining a credit relative to fault.[5]

Where, as here, no comparative causation question is submitted, the court of appeals is correct that "there is no right to credit for settlement between plaintiff and other defendants." 772 S.W.2d at 248. Because Stewart Title did not object to the failure to submit comparative fault nor request such an issue, it waived any right to seek a credit. *See First Title Co. of Waco v. Garrett*, 802 S.W.2d 254, 261–62 (Tex. App.—Waco 1990, no writ).

Even where otherwise mandated by the one recovery rule, an exception has been made to bar contribution among intentional, wilful or otherwise outrageous tortfeasors. *See Prosser & Keeton* at 336–39. Contribution is the payment by one tortfeasor of its proportional share of damages directly to another joint tortfeasor against whom a judgment is rendered. *See Black's Law Dictionary* 328 (6th ed. 1990). The well established majority rule is that contribution among knowing tortfeasors is not allowed. *See* Restatement (Second) of Torts § 886(A)(3) & cmt. j (1977); *Huddleston v. Herman & MacLean*, 640 F.2d 534, 557 (5th Cir.1981). In accord with this view is the statutory prohibition against contribution in cases of both intentional tort and in those involving violation of the Deceptive Trade Practices Act ("DTPA"), Tex. Bus. & Com.Code §§ 17.41 *et seq.*, or of the Insurance Code, Tex.Ins.Code art. 21.21. Tex.Civ.Prac. & Rem.Code § 33.002(a), (b)(2) & (3). Contribution is similar to application of the one recovery rule insofar as both result in a diminution in the amount a

---

**4.** This is true for both intentional and unintentional misconduct. While the court asserts that "there is no comparative fault allocation for intentional torts," see page 6, in fact the percent of damages actually *caused* by each tortfeasor can be allocated.

**5.** *See* Thomas R. Trenkner, Annotation, *Modern Development of Comparative Negligence Doctrine Having Applicability to Negligence Actions Generally*, 78 A.L.R.3d 339, 354–62 (noting approximately twenty-nine states with some form of comparative negligence and reduction in credit relative to fault and another six with a pure system of comparative reduction regardless of percentage of causation). *See, e.g., Thomas v. Solberg*, 442 N.W.2d 73, 77–78 (Iowa 1989) (quoting extensively from and following *Duncan*); *Vannoy v. Uniroyal Tire Co.*, 111 Idaho 536, 726 P.2d 648, 650, 658 (1985) (expressly adopting the *Duncan* rule); *Charles v. Giant Eagle Markets*, 513 Pa. 474, 522 A.2d 1 (1987) (citing *Duncan*); *Kussman v. City and County of Denver*, 706 P.2d 776, 779–80 (Colo.1985); *Cartel Capital Corp. v. Fireco of New Jersey*, 410 A.2d 674, 685 (N.J.1980); *Leger v. Drilling Well Control, Inc.*, 592 F.2d 1246, 1249 (5th Cir.1979); *Gomes v. Brodhurst*, 394 F.2d 465, 468–69 (3d Cir.1967); *see also, Dobson v. Camden*, 705 F.2d 759, 764–70 (5th Cir.1983) (adopting percent credit rule in section 1983 civil rights cases), *vacated on rehearing*, 725 F.2d 1003, 1004 (1984) (vacated because court found no joint liability).

particular tortfeasor must pay. Allowing Stewart Title to avoid liability on the basis of a third party settlement under the one recovery rule thus achieves the same result as the very contribution which this statute forbids. The court's apparent regression to the view that tort injuries are indivisible and that fault may not be apportioned permits a result contrary to this legislative directive.

Despite its strong similarity, contribution differs from the one recovery rule by requiring the tortfeasor to pay the entire judgment and then seek payment from the joint tortfeasor, rather than simply allowing a reduction of the amount of the tortfeasor's debt to the injured party. Although it should not approve a one recovery rule that allows non-settling tortfeasors to circumvent the current statutory ban on contribution, the court cannot justify its claim that the former contribution statute [6] is controlling. See page 6. Since application of the one recovery rule does not come directly within the definition of contribution, no contribution statute could directly control this case.

Nothing in *Beech Aircraft Corp. v. Jinkins*, 739 S.W.2d 19 (Tex.1987), a case involving significantly different facts, mandates application of the former contribution statute. In this pure contribution action, after settling with the plaintiff, one defendant sought contribution from a second defendant; no attempt was made by either defendant to obtain a credit against the plaintiff. Furthermore, in complete accord with *Duncan*, we held in *Jinkins* that the defendant could *not* obtain contribution as "a settling party has no right to common law contribution because he can settle only his proportionate share of liability....", *id.* at 21, and reaffirmed *Duncan's* determination that a party should be obligated to pay

for its proportionate share of causation. Rather than limiting our prior holding, we broadly "agree[d] that the common law scheme adopted in *Duncan* permits settlement of only a proportionate share of liability." *Id.*[7]

Several additional practical and policy concerns have compelled the nationwide rejection of the one satisfaction approach and adoption of comparative causation and a percentage recovery. One is the necessary distinction between the value of a settlement and the amount of damages awarded by a jury. The court today assumes that a settlement with third parties of $400,000 should result in a $400,000 reduction in the jury's trebled $200,000 award. See page 8. As we explained in *Duncan*, however:

> Settlement dollars represent a contractual estimate of the value of the settling tortfeasor's liability and may be more or less than the proportionate share of the plaintiff's damages. The settlement includes not only damages, but also the value of avoiding the risk, expense, and adverse public exposure that accompany going to trial.

665 S.W.2d at 431. It may be that some or even most of the $400,000 tendered by the settling parties was paid to avoid risk, and that reducing the $600,000 verdict by that amount denies Sterling of some of the damages award to which he legitimately is entitled.

In reviving the one recovery rule, the court erroneously assumes that the law's only purpose is to compensate victims and again ignores the objective of deterring wrongdoers. *See Caller–Times Publishing Co., Inc. v. Triad Communications, Inc.*, 1992 WL 34083*19 (Tex.1992) (Doggett, J., dissenting) (noting that the court has effectively eliminated the possibility of

6. Tex.Rev.Civ.Stat. art. 2212, *repealed by* Act of June 16, 1985, ch. 959, § 9(1), 1985 Tex.Gen. Laws 7218.

7. That today's opinion is not concerned with the absence of any showing of comparative liability by Stewart Title is all the more remarkable since its author, Justice Gonzalez, joined the dissent in *Jinkins.* 739 S.W.2d 19, 22 (Ray, J., dissenting). That dissent agreed that the pur-

pose of contribution, as with a percentage credit, "is to distribute equitably the burden of the common wrong between or among those responsible." *Id.* It realized that "[t]he underlying equities are not subverted *so long as* the nonsettling parties are given the opportunity to litigate their comparative liability...." *Id.* (emphasis added).

law enforcement in all antitrust predatory pricing actions). Not only is deterrence the basis for treble damages under article 21.21 of the Insurance Code, it was an explicit reason for rejecting *Bradshaw's* one recovery rule in *Dobson*, 705 F.2d at 765–66. That court explained that while the archaic one recovery rule was concerned only with avoiding unjust enrichment to the plaintiff, the law should also be concerned with holding the tortfeasor liable for the full share of the damage it causes in order to discourage similar misconduct in the future. *Id.* at 769–70.

In an apparent attempt to avoid unjust enrichment for the wronged, the court has guaranteed unjust enrichment for the wrongdoers. If one responsible for 50% of an injury settles for $50,000, and a second party responsible for the other half of the injury chooses to present its case to a jury, a determination that the total damages actually incurred were $50,000 is possible. The non-settling defendant should not be excused from payment of the $25,000 in damages it caused. Although the plaintiff then receives $75,000, there is no injustice, as this court has previously explained:

> [A]ny enrichment of plaintiffs under the new system of comparative causation is not unjust, for the simple reason that no one is harmed. The settling defendant cannot complain, because he agreed to pay. The non-settling defendant has no right to complain, because he was not a party to and is not affected by the settlement.

*Duncan*, 665 S.W.2d at 431.

Under today's opinion, however, injustice of another kind does occur. As several courts have agreed:

> The one-compensation rule, grounded in unjust enrichment, is not to be applied in such a way as to generate unjust enrichment to the only litigating defendant.... It would be unjust enrichment ... to give the only defendant who was eventually found liable ... a full pro tanto credit for the full amount paid by the others.

*Dobson*, 705 F.2d at 769, *quoting Rose v. Associated Anesthesiologists*, 501 F.2d 806, 809 (D.C.Cir.1974); *accord, Theobald v. Angelos*, 208 A.2d 129 (N.J.1965). By refusing settlement in a multi-party case, a tortfeasor can reap the benefits of settlement among any of the other parties. Stewart Title provides an example: it was found to have knowingly violated the Insurance Code, yet by avoiding settlement it saved itself $400,000 of what a jury found it should pay. This outcome cannot be reconciled with our observation that permitting non-settling tortfeasors to profit from strict application of the one recovery rule is an "unfair result" which *"should not be approved."* *Duncan*, 665 S.W.2d at 431 (emphasis added).

Allowing a tortfeasor to enjoy a windfall as a reward for recalcitrance is in complete conflict with this court's alleged preference for settlements. *See Rainbo Baking Co. v. Stafford*, 787 S.W.2d 41, 42 (Tex.1990); *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex.1989); *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 4 (Tex. 1986). Why resolve a multi-party case promptly when awaiting another party's settlement may produce a substantial credit? Moreover, exercising a dollar-for-dollar credit as approved today "shield[s] plaintiffs from the effect of bad settlements while denying them the benefit of good settlements." *Duncan*, 665 S.W.2d at 430; *see also, Gomes v. Brodhurst*, 394 F.2d 465 (3d Cir.1967).

Even if some vigor did remain in the tired bones of the one recovery rule, the court has failed to apply it correctly. Application of the rule necessarily depends on the determination that there was an inseparable, single injury suffered by the plaintiff for which only one recovery may be had. Further, the defendants must be established to be joint tortfeasors. *First Title*, 802 S.W.2d at 261–63. Indeed, *Jinkins*, on which the court relies, was concerned only with cases involving such joint tortfeasors. 739 S.W.2d at 20, 22.

Because Stewart Title's conduct was a separate and distinct act from that of the other defendants, employment of the one recovery rule is entirely inappropriate. Stewart Title never met its burden of es-

tablishing either that there was a single injury or that it was a joint tortfeasor. There were two different causes of action involving two different misrepresentations, one as to title, the other as to insurance coverage, as well as a separate claim for unfair claims settlement. Where such different actions exist, the one recovery rule should never be used. As the court of appeals correctly observed in affirming the trial court, "[n]either the seller, nor its legal counsel, could have committed [the] violations" of the Insurance Code for which Sterling recovered against Stewart Title. 772 S.W.2d 242, 248. The settlement with those parties should not, therefore, affect this statutory liability. The jury clearly found that Stewart Title and Stewart Title alone caused damages in the amount of $200,000 in response to the following question:

> What amount of money do you find from a preponderance of the evidence constitutes W. Dawson Sterling's actual damages, if any, that were produced by any deceptive trade practices, unconscionable action or course of action, unfair claims settlement practice, or improper trade practice, if any, found by you *to have been committed by Stewart Title Guaranty Company.*

*Id.* at 247 (emphasis added). Stewart Title should be required to pay those damages for which it is solely responsible.

Indeed, this court recognizes that there were two distinct bases for liability when it concludes that "the attorney's fees are capable of segregation." See page 12. This necessarily means that the suit against Stewart Title involved separate costs and considerations than that against the other defendants. If there were truly but one single act and injury, the attorney's fees could never be segregated.

Nor does the court ever explain why the court of appeals' reliance on *Mayo v. John Hancock Mut. Life Ins. Co.,* 711 S.W.2d 5 (Tex.1986), is misplaced. In that case, a single act of denying maternity benefits produced recovery for an insurer's violation of the Insurance Code and, separately, for its violation of the DTPA. *Id.* at 6–7; *see also Shell Oil Co. v. Chapman,* 682 S.W.2d 257, 259 (Tex.1984) (allowing recovery against the same defendant for the same act under both negligence and DTPA theories). *Ojeda de Toca v. Wise,* 748 S.W.2d 449, is once again the only writing by this court cited to the contrary. In that case there were multiple parties but apparently no separate article 21.21 action against the insurers.[8]

In addition to applying an abandoned rule to a case in which it would not have been used even when the rule was followed, the court has incorrectly calculated the credit. Relying on *Schering Corp. v. Giesecke,* 589 S.W.2d 516 (Tex.Civ.App.— Eastland 1979, writ ref'd n.r.e.), a pre-*Duncan* case, the court adopts a dollar-for-dollar credit for a previous pretrial settlement. See pages 9–10. Under *Duncan,* the reasoning and holding of *Schering* have clearly been overruled. 665 S.W.2d at 430; *cf.* McMains at 659.

Any dollar-for-dollar credit should have been limited to the $200,000 amount of compensatory damages found by the jury. In *Providence Hospital v. Truly,* 611 S.W.2d 127 (Tex.Civ.App.—Waco 1980, writ dism'd), which the court now disapproves, see page 10, the settling defendants paid $35,000, but the trial resulted in a finding of only $15,000 in actual damages under the DTPA. The trial court's post trebling credit of $15,000 was upheld as consistent with the deterrent purposes of the DTPA. Since the settlement agreement did not specify that the amount paid was in part for the compensation of statutory damages arising from the settling defendant's deceptive trade practices, the entire $35,000 was considered "actual compensatory damages." *Id.* at 137. The court reasoned that because the settlement was for compensatory damages only, and the trebled damage portion of the judgment was in the

---

**8.** The only other case relied upon by the court is *American Baler Co. v. SRS Systems, Inc.,* 748 S.W.2d 243 (Tex.App.—Houston [1st Dist.] 1988, writ denied). Though involving multiple defendants, SRS did not concern a defendant's settlement with a resulting credit, but rather an election of remedies for a single act against defendants still party to the suit.

nature of exemplary damages, the proper credit amount was applied only towards the portion of the judgment which represented compensatory damages, $15,000. Under this approach, which respects the punitive nature of trebling damages for a statutory violation, Stewart Title would be entitled only to a credit of the $200,000 in compensatory damages. While the court is correct that any credit should occur after the trebling of compensatory language, no credit was proper here since the non-settling defendant failed to request the jury to apportion liability.

To most members of the Bar and all members of the public the subject matter of today's writing is truly arcane. However, the process by which this court arrived at its decision—a process involving disregard for its own recent precedent, a statute, and the majority view in order to change the ground rules of litigation—should be of concern to all. This is not the last dead tort principle that this court is eager to resuscitate. Like the movies, this opinion will have its sequels. Unlike the movies, the havoc the court effects on our traditional tort law will cause direct harm to the lives of thousands of ordinary Texans.

MAUZY and GAMMAGE, JJ., join in this dissent.