COURT 
OF APPEALS
                                       
SECOND DISTRICT OF TEXAS
                                                   
FORT WORTH
 
                                        
NO. 2-06-121-CV
 
NP 
ANDERSON COTTON EXCHANGE, L.P.                
APPELLANT/APPELLEE
 
                                                   
V.
 
SANDRA 
POTTER D/B/A 7TH STREET GRILL             
APPELLEE/APPELLANT
 
                                              
------------
 
            
FROM THE 48TH DISTRICT COURT OF TARRANT 
COUNTY
 
                                              
------------
 
                                             
OPINION
 
                                              
------------
                                          
I.  
Introduction

Appellant 
and cross-appellee NP Anderson Cotton Exchange, L.P. appeals from a declaratory 
judgment in favor of appellee and cross-appellant Sandra Potter d/b/a 7th Street 
Grill giving Potter the option to extend a commercial lease for five additional 
years and awarding Potter attorney fees.[1]  We affirm the trial court=s 
judgment on the lease interpretation, but we reverse the trial court=s 
award of attorney fees and remand for an evidentiary hearing on this point. 

                       
II.  Background Facts and 
Procedural History
A.  The Parties
Potter 
is the sole proprietor of the 7th Street Grill restaurant in downtown Fort 
Worth.  Her husband, Rex Potter, is 
also substantially involved in this family-owned and operated business.  The 7th Street Grill has been in its 
present location for at least sixteen years and, before a menu expansion, was 
known as the 7th Street Hamburger Company. 
NP 
Anderson is a limited partnership formed for the purpose of acquiring the Neil 
P. Anderson Building, located at 411 West 7th Street in downtown Fort Worth, and 
developing it from an office building into high-end residential 
condominiums.  NP Anderson is 
affiliated with the real estate development firm Amicus Interest, LLC and its 
principals.
                            
B.  The Original January 
2001 Lease

Potter, 
the tenant, and NP Anderson, the landlord, are both assignees of parties who 
originally entered into the contract disputed in this case.  On January 22, 2001, the original and 
long-time tenants, Mark and Linda Gabioud d/b/a/ 7th Street Hamburger Company, 
entered into a lease agreement with TCDFW 411 West Seventh, L.P. (ATCDFW@), 
the original landlord, and then-owner of the Neil P. Anderson building.  The January 2001 lease (A2001 
Lease@) 
was for a 70-month initial term ending on December 31, 2006, and included the 
following language: AThis 
Lease shall not be amended, changed or extended, except by written instrument 
signed by both parties hereto.@
Paragraph 
42 of the main body of the 2001 Lease also expressly incorporated several 
attached documents, including AExhibit 
>D= 
B 
Special Stipulations,@ 
which contained an option for the tenant to renew and extend the lease for one 
additional term of five years: AProvided 
no Event of Default exists and Lessee is occupying the entire Leased Premises at 
the time of such election, Lessee may renew this Lease for one (1) additional 
period of five (5) years on the same terms provided in this 
Lease.@ 
[Emphasis in original.]
Exhibit 
D of the 2001 Lease also contained the following language, which NP Anderson 
relies upon to support its argument that the option had 
lapsed:
Lessee=s 
rights under this Exhibit shall terminate if this Lease or Lessee=s 
right to possession of the Premises is terminated, Lessee assigns any of its 
interest in this Lease or sublets any portion of the Premises, or Lessee fails 
to timely exercise its option under this Exhibit, time being of the essence with 
respect to Lessee=s 
exercise thereof.  

 
                              
C.  The Assignment of the 
Lease

In 
mid-2003, Potter, who is Mark Gabioud=s 
sister and had gained substantial experience managing parts of the 7th Street 
Hamburger Company for the Gabiouds, obtained a Small Business Administration 
loan of $150,000 to purchase the business.  
Potter purchased the business, expanded the menu, and gave the restaurant 
its new name, the 7th Street Grill. 
Potter, 
Mark and Linda Gabioud, and then-landlord TCDFW all signed a Consent to 
Assignment (A2003 
Consent@) 
that was effective May 27, 2003.  In 
the trial court, the most debated portion of the 2003 Consent was the following 
clause:
Assignee 
[Potter] agrees to assume Assignor=s 
[the Gabiouds=] 
obligations under the Lease and to accept the premises in their present 
AAS 
IS@ 
condition.  It is agreed and 
understood that the aforesaid Lease shall remain in full force and effect 
without modification except as expressly set forth herein.  Accordingly, all remaining terms, 
conditions, and provisions of such Lease shall remain unchanged in full force 
and effect and are ratified and confirmed.  

 
Landlord 
[TCDFW] consents to this assignment.  [Emphasis added.].
 
TCDFW 
and NP Anderson entered into a APurchase 
and Sale Agreement@ 
on April 6, 2004.  On that same day, 
TCDFW prepared an Estoppel Certificate for Potter to sign Ain 
connection with the potential building sale.@  This certificate verified that the only 
amendment to the 2001 Lease was the 2003 Consent.  The certificate also 
stated,

[Potter] 
has no right or option whatsoever to purchase or otherwise acquire the premises 
leased pursuant to the Lease . . . except as follows . . . : Extension Option 
C 
One (1) additional period of five (5) years on same terms by delivering (90) 
days written notice before expiration of the original term. 
[Emphasis in original.] 
 
          
D.  NP 
Anderson=s 
Acquisition of the Neil P. Anderson Building
                                
and the Subsequent Litigation
On 
June 23, 2004, pursuant to their Purchase and Sale Agreement, NP Anderson 
purchased the Neil P. Anderson Building from TCDFW.  Upon closing, NP Anderson received an 
assignment of leases, including Potter=s, 
and thus became the new landlord.

At 
some point between June and November of 2004, NP Anderson announced plans to 
convert the Neil P. Anderson Building from offices to luxury condominiums.  Potter originally sued NP Anderson for 
specific performance (to stop the conversion), for a declaratory judgment that 
the conversion was improper under the governing rules and regulations of the 
building, for breach of contract (diminution of sales and consequential 
damages), and for tortious interference with contract.[2]  She later filed a Second Amended 
Original Petition to add a declaratory judgment claim regarding whether she 
could extend the 2001 Lease.  NP 
Anderson then filed its own request for declaratory judgment arguing that the 
Gaboiud-Potter assignment terminated any assignee=s 
right to an extension, which would have required Potter to vacate by December 
31, 2006. 
After 
the trial court denied a wave of summary judgment motions, the remaining 
claimsClargely 
Potter=s 
claim for breach of contract damages and the parties= 
competing declaratory judgment actions concerning the existence of a five-year 
lease extension optionCwent 
to trial.  At the trial of 
Potter=s 
breach of contract claim regarding NP Anderson=s 
conversion of the building from office to residential use, the jury found that 
NP Anderson had successfully modified the 2001 Lease to permit residential 
dwellings and had therefore not breached the 2001 Lease.
Regarding 
Potter=s 
lease extension claim, the parties disputed the meaning of the language in the 
2003 Consent.  Potter argued that 
the language and other circumstances surrounding the assignment meant that the 
parties agreed she acquired the same five-year lease extension option that the 
Gabiouds had under the original 2001 Lease.  NP Anderson argued that the 2003 Consent 
did not give Potter the same extension option that the Gabiouds 
had.

The 
trial court found that the 2001 Lease and the 2003 Consent, when read together, 
were ambiguous as a matter of law.  
Consequently, the trial court submitted a question to the jury to 
Ainterpret 
the Assignment of Lease as applied to the Extension Option@ 
by determining whether the parties to the 2001 Lease and the 2003 Consent 
intended for Potter (the assignee) to have an option to renew and extend 
the lease for an additional five years after the 2001 Lease and primary term 
expired (Question No. 4).  The jury 
concluded that Athe 
parties to the Potter Lease intended that Sandy Potter would have the option to 
extend and/or renew the lease for an additional period of five 
years.@
The 
jury also determined that Aa 
reasonable fee for Sandy Potter=s 
attorneys in this case@ 
was $212,753.50 for preparation and trial, $30,000 for the first appeal, and 
$15,000 for an appeal to the Texas Supreme Court.  The trial court entered judgment on the 
jury=s 
verdict that Potter had the contractual right and option to extend the 2001 
Lease for five years and awarded Potter=s 
attorneys reduced fees of $75,000 for trial preparation, $20,000 for a 
successful initial appeal, and $12,500 for a successful appeal to the Texas 
Supreme Court.  NP Anderson 
appealed, challenging the trial court=s 
rulings on both the extension and the attorneys= 
fees, and Potter filed a conditional cross-appeal.
                                    
E.  
Potter=s 
Cross-Appeal

Potter 
asks us to consider her cross-appeal raising jury charge error in only two 
situations: (1) if we reverse the trial court=s 
declaratory judgment on the lease extension option or (2) if we reverse the 
award of her attorneys= 
fees to Potter for any reason except to remand the case to the trial court for a 
new evidentiary hearing on attorneys= 
fees and re-entering of judgment on that basis.  Thus, we address NP Anderson=s 
points first.
                         
III.  The Lease Assignment 
and Extension
In 
its first issue, NP Anderson argues that the trial court erred by overruling its 
objection to submitting Question No. 4 to the jury, by denying its motion to 
disregard the jury=s 
answer to that question, and by denying its motion for partial new trial based 
on Question No. 4.
                                     
A.  Standard of 
Review
The 
trial court determined that the 2001 Lease and 2003 Consent, when read together, 
were ambiguous as a matter of law.  
A trial court=s 
conclusions of law are reviewed de novo.  Huntley v. Enon Ltd. P=ship, 
197 S.W.3d 844, 849 (Tex. App.CFort 
Worth 2006, no pet.).  We accord no 
deference to the lower court=s 
decision.  Quick v. City of 
Austin, 7 S.W.3d 109, 116 (Tex. 1998).  
Conclusions of law will be upheld on appeal if the judgment can be 
sustained on any legal theory supported by the evidence.  Boyd v. Boyd, 67 S.W.3d 398, 404 
(Tex. App.CFort 
Worth 2002, no pet.).
                                        
B.  Applicable 
Law

We 
apply well-established rules of contract interpretation when construing the 2001 
Lease and the subsequent writings.  
See Huntley, 197 S.W.3d at 849.  Specifically, when construing a written 
contract, our primary concern is to ascertain the true intent of the parties as 
expressed in the instrument.  
Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983).  We must examine and consider the entire 
lease and its subsequent writings in an effort to harmonize and give effect to 
all provisions so that none are rendered meaningless.  J.M. Davidson, Inc. v. Webster, 
128 S.W.3d 223, 229 (Tex. 2003); Coker, 650 S.W.2d at 393; see Bd. of 
Ins. Comm=rs 
v. Great S. Life Ins. Co., 
239 S.W.2d 803, 809 (Tex. 1951) (holding that multiple instruments executed at 
different times may be read together as a single writing if they were part of 
the same transaction).  If the 
written instrument is so worded that it can be given a definite or certain legal 
meaning, then the contract may be construed as a matter of law.  Coker, 650 S.W.2d at 
393.
Moreover, 
all contractual provisions should be considered with reference to the entire 
instrument, and no single provision taken alone should be controlling.  J.M. Davidson, 128 S.W.3d at 
229.  A simple lack of clarity or 
disagreement between parties does not render a term ambiguous.  See DeWitt County Elec. Coop., Inc. 
v. Parks, 1 S.W.3d 96, 100 (Tex. 1999).  Rather, an ambiguity arises only after 
the application of established rules of construction leaves an agreement 
susceptible to more than one meaning.  
Id. 

For 
an ambiguity to exist, both potential meanings must be reasonable.  Id.  Whether a contract is ambiguous is a 
question of law for the trial court to decide by looking at the contract as a 
whole in light of the circumstances present when the contract was entered.  Coker, 650 S.W.2d at 394.  Only when a contract is first determined 
to be ambiguous should the court consider the parties= 
interpretations, which are questions of fact.  Sun Oil Co. (Del.) v. Madeley, 
626 S.W.2d 726, 732 (Tex. 1981).
                                            
C.  
Analysis
NP 
Anderson asserts that the 2001 Lease=s 
unambiguous language supersedes all other documents, including the 2003 
Consent.  Therefore, according to NP 
Anderson, the trial court should have determined the 2001 Lease to be 
unambiguous as a matter of law, and the trial court erred in concluding 
otherwise.  Potter, conversely, 
argues that the 2001 Lease and subsequent 2003 Consent, when read together, 
unambiguously granted her the option to renew and extend her lease for five 
additional years.
The 
interpretation of the 2001 Lease and 2003 Consent rests largely on the reading 
of three provisions.  The 2001 Lease 
between TCDFW and Mark and Linda Gabioud contained the following 
language:
Lessee=s 
rights under this Exhibit shall terminate if this Lease or Lessee=s 
right to possession of the Premises is terminated, Lessee assigns any of its 
interest in this Lease or sublets any portion of the Premises, or Lessee fails 
to timely exercise its option under this Exhibit, time being of the essence with 
respect to Lessee=s 
exercise thereof.
 

The 
language provides that if a lessee assigns any of its interest in the 2001 Lease 
or sublets any portion of the premises, the lessee=s 
rights shall terminate.  In this 
case, there was a wholesale substitution of one lessee for another lessee with 
the express consent of the landlord.  
The 2003 Consent, which was prepared by then-landlord TCDFW and agreed to 
by Potter, provides,
It 
is agreed and understood that the aforesaid Lease shall remain in full force and 
effect without modification except as expressly set forth herein.  Accordingly, all remaining terms, 
conditions, and provisions of such Lease shall remain unchanged in full force 
and effect and are ratified and confirmed.
 
Landlord 
consents to this Assignment. 
[Emphasis added.]
Thus, 
the 2003 Consent states that all conditions of such lease will remain in full 
force and effect, including the termination provision. 


NP 
Anderson contends that the assignment to Potter (contained within the 2003 
Consent) terminated Potter=s 
option to extend because the 2001 Lease stated that the ALessee=s 
rights,@ 
including the extension right, Ashall 
terminate if . . . Lessee assigns any of its interest in this Lease.@  If this were true, however, the clause 
within the 2003 Consent stating, Athe 
aforesaid Lease shall remain in full force and effect without modification 
except as expressly set forth herein,@ 
would be rendered meaningless.  
See Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 662 (Tex. 
2005) (stating the courts must examine the entire writings and give effect to 
all provisions of the contract so that none will be rendered meaningless).  More importantly, language within the 
main text of the 2001 Lease empowered the parties to the lease to amend or 
change the terms of the lease.  
Specifically, paragraph 41 of the 2001 Lease provided, A[t]his 
Lease shall not be amended, changed or extended, except by written instrument 
signed by both parties hereto.@  [Emphasis added.]  See Givens v. Dougherty, 671 
S.W.2d 877, 878 (Tex. 1984) (holding that parties to a written contract within 
the parameters of the Statute of Frauds may modify contracts in writing); 
BACM 2001-1 San Felipe Rd. Ltd. P=ship 
v. Trafalgar Holdings I, Ltd., 
218 S.W.3d 137, 145-46 (Tex. App.CHouston 
[14th Dist.] 2007, pet. denied) (holding that a modification to a contract need 
not restate all the essential terms of the original agreement); Boudreaux 
Civic Ass=n 
v. Cox, 
882 S.W.2d 543, 547-48 (Tex. App.CHouston 
[1st Dist.] 1994, no writ) (AA 
modification to a contract creates a new contract that includes the new, 
modified provisions and the unchanged old provisions.@).

The 
2003 Consent was a valid modification of the 2001 Lease, as it was written and 
signed in accordance with paragraph 41 of the 2001 Lease.  See Tex. Bus. & Com. Code Ann. 
' 
26.01(b)(5) (Vernon Supp. 2006) (providing that a lease of real estate for a 
term longer than one year must be in writing); Givens, 671 S.W.2d at 
878.  Further, the 2003 Consent only 
provided for one change to the 2001 LeaseCa 
substitution of parties, the lessees.  
Any assignment of the 2001 Lease would require the lessor=s 
written consent in order to avoid the automatic termination language contained 
in Exhibit D of the 2001 Lease, and here, the lessor gave its written 
consent.  Thus, save that one 
modification, all other provisions of the 2001 Lease, including the option to 
extend, remained Ain 
full force and effect.@[3] 
 See Boudreaux Civic 
Ass=n, 
882 S.W.2d at 547-48.  Further, NP 
Anderson was provided a copy of the Estoppel Certificate that specifically 
disclosed both the existence of the assignment to Potter and existence of the 
Extension Option.

By 
concluding that the 2003 Consent prevented the 2001 Lease extension forfeiture 
from being triggered, we are harmonizing all instruments so as to not render any 
provision meaningless.  See 
id.  Reading the 2001 Lease and 
the 2003 Consent as separate parts of the same contract, we conclude that the 
contract can be given a definite and certain legal meaning and is, therefore, 
unambiguous.  See J.M. Davidson, 
Inc., 128 S.W.3d at 229.  We 
hold that the 2001 Lease and 2003 Consent unambiguously gave Potter an option to 
renew and extend the 2001 Lease for an additional five-year period after 
December 31, 2006.  Although the 
trial court erred in determining that the contract was ambiguous, the 
jury=s 
answer to Question No. 4 renders the error harmless.  See N.M. Uranium, Inc. v. Moser, 
587 S.W.2d 809, 815 (Tex. Civ. App.CCorpus 
Christi 1979, writ ref=d 
n.r.e.).  Accordingly, we overrule 
NP Anderson=s 
first point.  
                                         
IV. Attorney Fees
In 
its second point, NP Anderson argues that the trial court erred in awarding 
attorney fees to Potter because she did not carry her burden of either 
segregating the fees or showing that segregation was impossible and because the 
grounds for the fee award were divorced from any evidence. 

A. 
Standard of Review and Applicable Law

The 
grant or denial of attorney fees in a declaratory judgment action lies within 
the discretion of the trial court, and its judgment will not be reversed on 
appeal absent a clear showing that it abused its discretion.  Oake v. Collin County, 692 S.W.2d 
454, 455 (Tex. 1985); Hill v. Heritage Res., Inc., 964 S.W.2d 89, 143 
(Tex. App.CEl 
Paso 1997, pet. denied); see Ridge Oil Co. v. Guinn Invs. Inc., 
148 S.W.3d 143, 163 (Tex. 2004) (using an abuse of discretion standard of review 
when evaluating non-declaratory judgment actions); Bocquet v. Herring, 
972 S.W.2d 19, 20 (Tex. 1998) (same); Aaron Rents, Inc. v. Travis Cent. 
Appraisal Dist., 212 S.W.3d 665, 669 (Tex. App.CAustin 
2006, no pet.) (op. on reh=g) 
(same).  Under the Texas Declaratory 
Judgment Act (AAct@), 
a court Amay 
award costs and reasonable and necessary attorney=s 
fees as are equitable and just.@  Tex. Civ. Prac. & Rem. Code Ann. 
' 
37.009 (Vernon 1997); Jones v. Krown, 218 S.W.3d 746, 750 (Tex. 
App.CFort 
Worth 2007, pet. filed).  
AThe 
statute . . . affords the trial court a measure of discretion in deciding 
whether to award attorney=s 
fees or not@ 
and places few restrictions on this discretion.  Bocquet, 972 S.W.2d at 
20-21.  Reasonableness and necessity 
are fact questions; the equity and justice of the fee award are left to the 
trial court=s 
discretion.  Ridge Oil Co., 
148 S.W.3d at 161; Bocquet, 972 S.W.2d at 21; Krown, 218 
S.W.3d at 750.

Implicit 
in any award of attorney fees is that they are authorized. A party seeking 
attorney fees is required to segregate fees incurred on claims allowing recovery 
of fees from those that do not.  
Stewart Title Guar. Co. v. Aiello, 941 S.W.2d 68, 73 (Tex. 1997); 
Emerson Elec. Co. v. Am. Permanent Ware Co., 201 S.W.3d 301, 316 (Tex. 
App.CDallas 
2006, no pet.); Hill, 964 S.W.2d at 143.  An exception to the duty to segregate 
arises when the party=s 
claims are so interrelated that their prosecution or defense entails proof or 
denial of essentially the same facts.  
Tex. R. App. P. 44.1(a); 
Tony Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299, 311 (Tex. 2006); 
Emerson Elec. Co., 201 S.W.3d at 316; Hill, 964 S.W.2d at 143.  Thus, Potter must segregate the fees 
among her claims or establish that the claims are sufficiently related.  See Chapa, 212 S.W.3d at 311; 
Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 10 (Tex. 1991); 
Emerson Elec. Co., 201 S.W.3d at 316; Hill, 964 S.W.2d at 
143.
                                             
B. Analysis
Potter 
argues that NP Anderson forfeited this point by not objecting to her lack of fee 
segregation until after the close of Potter=s 
case-in-chief.  However, it was 
Potter=s 
burden either to segregate the fees or show that she was unable to do so.  See Chapa, 212 S.W.3d at 311; 
Sterling, 822 S.W.2d at 11; Emerson Elec. Co., 201 S.W.3d at 
316.  Further, by moving for a 
directed verdict and by objecting to the jury charge based on Potter=s 
failure to segregate her attorneys= 
fees, NP Anderson alerted the trial court to its complaint; at that point, the 
trial court could have required Potter to offer evidence showing that the fees 
could not be segregated.  See 
Tex. R. App. P. 33.1; 
Mandell v. Mandell, 214 S.W.3d 682, 691 (Tex. App.CHouston 
[14th Dist.] 2007, no pet.); Sterling, 822 S.W.2d at 11 (holding that it 
is not necessary to object to attorney fee evidence for lack of segregation at 
the time it is offered; an objection to the jury charge on this issue is 
sufficient).

At 
trial, Potter brought several claims against NP Anderson.  Potter originally sued NP Anderson for 
specific performance (to stop the office conversion), for a declaratory judgment 
that the conversion was improper under the governing rules and regulations of 
the building, for breach of contract (diminution of sales and consequential 
damages), and for tortious interference with contract.  She later filed a Second Amended 
Original Petition to add a declaratory judgment claim regarding whether she 
could extend the 2001 Lease.  The 
trial court granted summary judgment in favor of NP Anderson regarding 
Potter=s 
specific performance and tortious interference with contract claims.  The remaining claims went to trial.  At the trial of Potter=s 
breach of contract claim regarding NP Anderson=s 
conversion of the building from office to residential use, the jury found that 
NP Anderson had successfully modified the 2001 Lease to permit residential 
dwellings and had therefore not breached the 2001 Lease.[4]  Thus, the only claim that Potter 
prevailed upon at trial was her declaratory judgment action brought on 
the lease extension claim and her related attorneys= 
fees.

When 
a party pleads several causes of action including a request for a declaratory 
judgment and an award of attorney fees and is subsequently awarded declaratory 
relief but denied other relief, the party is entitled only to those attorney 
fees attributable to the declaratory judgment action.  See Hill, 964 S.W.2d at 143; 
Canales v. Zapatero, 773 S.W.2d 659, 662 (Tex. App.CSan 
Antonio 1989, writ denied) (op. on reh=g).  Hence, absent evidence showing that 
Potter=s 
attorneys= 
fees on all of her claims were inextricably intertwined, she should have 
received her attorneys= 
fees only for the declaratory judgment on the lease extension claim.  See Aiello, 941 S.W.2d at 73; 
Hill, 964 S.W.2d at 143; Canales, 773 S.W.2d at 
662.

In 
response to NP Anderson=s 
motion for a directed verdict regarding the lack of segregation in 
Potter=s 
attorneys= 
fees, Potter=s 
counsel did not provide guidance about what fees were reasonable, necessary, 
equitable, and just.  Further, 
Potter=s 
counsel never testified or argued that he was unable to segregate the fees 
because the facts surrounding the claims were inextricably intertwined.  See Chapa, 212 S.W.3d at 311; 
Sterling, 822 S.W.2d at 11; Emerson Elec. Co., 201 S.W.3d at 
316.  Despite this, the trial court 
stated that Athe 
fees [for all of Potter=s 
claims] are inextricably intertwined@ 
and held that Aas 
a matter of law they are not segregable.@  Other than stating, AI=m 
going to tell you that I know that they=re 
inextricably intertwined.  I can see 
the fabric of it,@ 
and alluding to its trial experience, the trial court gave no explanation for 
its conclusion.  Thus, even though 
Potter prevailed only on the declaratory judgment action, proof of her 
attorneys= 
fees on this successful claim was never segregated from her other unsuccessful 
claims.[5]
We 
agree with NP Anderson=s 
assertion that Potter=s 
lease extension claim involves entirely different facts than her building 
conversion claims.  To prevail on 
her theories that NP Anderson acted wrongly in changing the building=s 
use and character, Potter had to prove that either the rules and regulations 
under the 2001 Lease or Texas law forbade those changes without NP Anderson 
incurring liability.  In contrast, 
to prevail on her declaratory judgment claim regarding the lease extension, 
Potter had to prove that the 2001 Lease and the 2003 Consent did not trigger the 
loss of the extension option.

Potter 
argues that the trial court has extremely broad discretion under the Act to 
award attorney fees and did not abuse that discretion.  See Tex. Civ. Prac. & Rem. Code Ann. 
' 
37.009.  Indeed, in declaratory 
judgment actions, the trial court has the discretion not only to award attorney 
fees but also to award less than the amount determined by a jury to be 
reasonable and necessary.  See 
Ridge Oil Co., 148 S.W.3d at 161-62.  
Here, however, because it was possible that Potter could have prevailed 
on some, but not all, claims, the trial court should have required evidence of 
segregation before sending this case to the jury.  See Chapa, 212 S.W.3d at 311; 
Sterling, 822 S.W.2d at 10; Emerson Elec. Co., 201 S.W.3d at 316; 
Hill, 964 S.W.2d at 143.  
Failure to do so was an abuse of discretion.
Because 
the trial court abused its discretion by awarding Potter=s 
unsegregated attorneys= 
fees, we need not reach NP Anderson=s 
sufficiency challenge.  See 
Hill, 964 S.W.2d at 143 (remanding for new trial on attorney=s 
fees, but not conducting a factual sufficiency review, when plaintiff failed to 
segregate fees relating to successful declaratory judgment action from other 
unsuccessful claims).  Accordingly, 
we sustain NP Anderson=s 
second point.
                                              
V.  
Costs
All 
portions of the designated record were necessary for our review.  Therefore, we tax costs equally to both 
parties based on the entire record as supplemented.  See Tex. R. App. P. 
34.6(c)(3).
                                          
VI.  
Conclusion

Having 
overruled NP Anderson=s 
first point and sustained its second point, we reverse the trial 
court=s 
award of her attorneys= 
fees and remand this case to the trial court for the sole purpose of conducting 
an evidentiary hearing on attorney fees and entering a new judgment on that 
basis.  Because we reverse and 
remand this case on the issue of attorney fees, we need not reach 
Potter=s 
cross-appeal.
 
TERRIE 
LIVINGSTON
JUSTICE
 
PANEL 
A:   CAYCE, C.J.; LIVINGSTON and 
DAUPHINOT, JJ.
CAYCE, 
C.J. concurs without opinion.
DELIVERED: 
July 12, 2007




[1]In 
the interest of clarity, throughout this opinion we refer to the parties as NP 
Anderson and Potter instead of Aappellant 
or cross-appellee@ 
and Aappellee 
or cross-appellant.@

[2]Historically, 
the 7th Street Grill was a lunch-only, Monday-through-Friday restaurant with an 
office worker clientele, so Potter could have seen a reduction in profits if NP 
Anderson converted the building from office to residential 
use.

[3]The 
clause in the 2001 Lease restricting Potter from assigning any of her lease is 
also still in effect.  Hence, if 
Potter conducts a transaction assigning a portion of her lease without the 
consent of NP Anderson, Potter=s 
rights under the extension option would then be 
terminated.

[4]The 
jury considered Potter=s 
declaratory judgment claim that the conversion was improper under the governing 
rules and regulations of the building alongside with Potter=s 
breach of contract claim.

[5]The 
jury awarded Potter $212,753.50 for preparation and trial, $30,000 for a 
successful first appeal, and $15,000 for a successful appeal to the Texas 
Supreme Court.  The questions 
submitted to the jury regarding Potter=s 
attorneys= 
fees were not segregated by causes of action.  However, the questions submitted 
regarding NP Anderson=s 
causes of action were segregated.  
At the hearing on Potter and NP Anderson=s 
motions for entry of judgment and NP Anderson=s 
motion to disregard the jury findings, the trial court reduced this award to 
$75,000 for trial preparation, $20,000 for a successful initial appeal, and 
$12,500 for a successful appeal to the Texas Supreme 
Court.